FRANK BUNTING *et al. vs.* BOARD OF CANVASSERS AND REGISTRATION OF THE CITY OF CRANSTON.

JULY 27, 1959.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

64

PAOLINO, J. This is a petition for a writ of mandamus to order the respondent to issue to the petitioners certificates of election as members of the fourth ward Democratic committee in the city of Cranston. Pursuant to said petition the superior court issued an alternative writ of mandamus ordering the respondent to issue such certificates or to show cause why it should not do so. The cause is before this court on the petitioners' appeal from the judgment of the superior court denying and dismissing the petition.

It appears from the petition and from certain exhibits which are in evidence that petitioners and nine other persons filed declarations of candidacy, under general laws 1956, §17-14-1, for election to the fourth ward Democratic committee in Cranston at the primary election to be held on September 17, 1958; that the nomination papers of said candidates were signed by a sufficient number of qualified electors and duly filed with the board; that in accordance with the provisions of §17-12-11, the incumbent ward committee endorsed nine of said candidates; that the nine so endorsed received a plurality of all the votes cast at such

primary election and were declared elected by the board in accordance with the provisions of §17-15-29; and that certificates of election were issued to them by the board under §17-15-30. The election laws were amended in 1958 causing the renumbering of certain sections referred to herein.

It also appears that on August 15, 1958, approximately one month before the primary, and on September 17, 1958, the day of the primary, petitioners demanded from the board certificates of election to the ward committee. The board refused such demands on the ground that petitioners were not entitled to the certificates. At the hearing in the superior court the chairman of the fourth ward Democratic committee was allowed to intervene as a party respondent. No oral testimony was presented by petitioners at such hearing. They rested on their sworn petition and on certain exhibits which were in evidence by agreement. At the close of petitioners' case the board moved that the petition be denied and dismissed. Although the board had filed an answer alleging in part that the limitation relative to the number of the membership of the various ward committees of the Democratic party in the city of Cranston was regulated by the bylaws of the Democratic city committee and by usage and custom, it offered no evidence to support such allegations.

On the basis of the record before it the superior court granted the board's motion on the ground that petitioners had not established sufficient evidence to warrant going forward with the case. The petitioners contend that such ruling is erroneous. They argue that there is no lawful limitation of any kind, either constitutional or statutory, limiting the membership of said ward committee to any specific number. They also argue that there is no evidence in the record of any party rule, regulation, bylaw, usage or custom limiting or restricting such membership to any particular number. They therefore contend that all qualified electors in the ward who file declarations of candidacy

for election to said committee and who obtain the required number of valid signatures on the pertinent nomination papers are entitled to certificates of election regardless of whether or not their names appear on any ballot and regardless of the results of the primary election. We do not agree with petitioners' contention.

The narrow issue before us is whether, in the absence of constitutional or statutory provision, a city committee can lawfully fix the membership of a ward committee with respect to the number of persons who can be elected thereto by voters qualified to vote in the party's primary.

In a representative democracy, where all qualified electors are permitted to vote and participate in the processes of government, there must of necessity be some machinery for nominating candidates for public office. Political parties perform this function. They are an adjunct to representative government, even though there is no constitutional or statutory requirement compelling their existence. Political parties operate through political committees. In this state the matter of political committees is governed by the provisions of G. L. 1956, chap. 17-12. Section 6 thereof provides for the election of town and ward committees at the primary held to nominate party candidates. In §7 it is provided that in each city members of the several ward committees of the same political party shall constitute the city committee of such political party for that city. Section 10 vests city committees with power, within certain limitations, to manage the affairs of each political party in the respective cities, and under §11 ward and city committees are given power to endorse party candidates for the various offices in the respective wards and cities.

It is well established that political parties are voluntary organizations, with inherent powers of self-government. Many of such powers have been adopted by legislative enactments. The power to nominate party candidates is one of the inherent powers of political parties. Primary

laws have been enacted in this state, not to confer such power or to compel its use but rather to regulate the exercise thereof when such power is used by the political parties and to set up governmental machinery to afford qualified party voters the means of selecting candidates.

The conduct of primaries in this state is governed by G. L. 1956, chap. 17-12. In substance such act provides that wherever there is a party contest for nominations for public office or for election to party committees a primary shall be held in accordance with the provisions of such act. Section 17-15-29 provides for the number of votes required to nominate or elect. But there is no constitutional or statutory provision in this state dealing expressly with the question relating to the number of persons who may be elected to a ward committee. In the absence of such provisions it is our opinion that the power to determine the membership of a ward committee with respect to the number of candidates who shall be presented to the qualified voters for election thereto is inherent in the city committee of the particular political party. See *People ex rel. Lindstrand* v. *Emerson,* 333 Ill. 606. Moreover it is our opinion that in enacting §17-12-10 the legislature of this state has affirmed the existence of such power.

The question remains whether the Democratic city committee in Cranston exercised such power in the instant case. The petitioners concede that such committee consists of forty-five members, exclusive of officers, representing the five wards in Cranston. The incumbent ward committee endorsed the candidacies of nine of the persons who filed declarations. In the absence of any evidence or statute to the contrary, it is reasonable to assume that equality prevails among the ward committees of the same political party in Cranston. Moreover, in view of petitioners' concession that the city committee consists of forty-five elected members, it is also reasonable to assume that the city

68

committee established the membership of each ward committee to consist of a maximum of nine members.

In the circumstances, in the absence of evidence to the contrary, it is reasonable to assume that in voting such endorsements the ward committee acted in compliance with the rules and regulations of the city committee of which it was a component part. In our opinion the endorsement of nine candidates as aforesaid is evidence of the existence of such rule. For these reasons the ruling of the trial justice was not erroneous.

The appeal of the petitioners is denied, the judgment appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Pontarelli & Berberian, Aram K. Berberian,* for petitioners.

*Frank W. Golemba,* City Solicitor, *Pat Nero,* for respondent.