222 A.2d 567.

EUGENE G. GALLANT *vs.* AUGUST P. LAFRANCE, *Secretary of State.*

DECISION AUGUST 2, 1966.

OPINION SEPTEMBER 14, 1966 AS OF AUGUST 2, 1966.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PER CURIAM. This is an appeal from the judgment entered by a superior court justice denying and dismissing a complaint seeking to enjoin the defendant Secretary of State from placing the name of the candidate of the Democratic party for the office of representative in congress for the first district on the primary ballot in the manner authorized by the provisions of G. L. 1956, §§17-12-5 (now §17-12-4) and 17-15-8, as amended.

The plaintiff, a declared candidate for said congressional office, bases his complaint on two contentions. They are in substance, first, that with the passage of P. L. 1966, chap.

116, an act adopted May 6, 1966 reapportioning the house of representatives, the members of the Democratic state committee elected at the Democratic party primary in September 1964 ceased to hold office as provided by art. I, sec. 1, of the Democratic state committee rules and are therefore without authority to endorse candidates as provided in G. L. 1956, §17-12-5, as amended (now §17-12-4); and second, that any purported endorsement would be in violation of constitutional limitations.

For reasons which will be fully set forth in an opinion to be filed subsequently, we hold the plaintiff's contentions to be without merit and, in the interest of advising the defendant Secretary of State at the earliest possible moment, affirm the judgment entered in the superior court.

POWERS, J. This is an appeal from a superior court judgment denying and dismissing a complaint which in effect seeks a judicial determination that the provisions of G. L. 1956, §17-12-4, as amended,[1] authorizing the endorsement of primary candidates, are not applicable to the Democratic state committee as presently constituted.

The gravamen of the cause is readily discernible from the pleadings. They establish that plaintiff and at least one other voter have filed declarations of their candidacies in the Democratic primary for the nomination of representa-

---

[1] "17-12-4. Endorsements by state committee.—The state committee, or the executive committee or any duly selected subcommittee of said executive committee acting under such delegated authority may, when the town, city, ward, or district committee has failed or neglected to do so, within twenty-four (24) weekday hours of such failure, notify the local board of the endorsement, if any, of the local candidates to be voted on, in the primary; it shall notify the secretary of state of the endorsement, if any, of any candidate to be voted for by the state at large; provided, however, that the endorsement of any candidate for representative in congress shall be by the members of the state committee who shall be from such particular congressional district. Such endorsement shall be filed with the secretary of state not later than 5 p.m. of the second day after the final day for filing declarations of candidacy."

tive in congress for the first district pursuant to G. L. 1956, §17-14-1, as amended.[2] The pleadings further establish that a meeting of the Democratic state committee had been called for July 1, 1966, at which time the order of business would include the endorsement of candidates seeking nominations in the Democratic primary.

Predicated on the premise that any such endorsements would lack validity, the complaint prays that defendant Secretary of State be restrained from placing the name of the purportedly endorsed candidate for congress for the first district in the first column of the voting machines to be used at the primary election.

The placing of the names of endorsed candidates in the first column is prescribed by G. L. 1956, §17-15-8, as amended,[3] and unless otherwise ordered by lawful authority is binding on defendant in his official capacity.

[2] "17-14-1. Declarations of candidacy.—During the last ten (10) days in June in the even years and between the twenty-first and twenty-sixth day preceding a primary election for a special election or a primary election held pursuant to chapter .15 of this title each voter desiring to be a party candidate at the forthcoming primary shall, on such form as shall be provided by the secretary of state, sign his name as the same appears on the voting list and file not later than 5 p.m. of the date of filing with said secretary of state for state offices or with the appropriate local board for local officers, a declaration of his candidacy which shall include the following information: * * .*"

[3] "17-15-8. Listing of candidates on ballots and ballot labels.—The secretary of state shall forthwith upon receipt of the certificates provided for by chapter 14 of this title cause the proper ballots or ballot labels to be prepared for use in the various voting districts. Names of party candidates for a particular office shall be printed horizontally and alphabetically opposite and to the right of the names of the office they seek and shall not appear on the ballot more than once for the same office; provided, however, the names of candidates having the endorsement of their party committees shall be printed in the first column at the right of the title of the offices they seek and shall be marked with an asterisk (*); provided, further, however, that in the event that there be more candidates for a particular office than the voting machine can accommodate in such horizontal column, the names shall be continued in alphabetical order succeeding the last name at the extreme right of such column to the next horizontal column beneath such column."

The plaintiff first contends that the composition of the Democratic state committee on July 1, 1966 does not conform to the committee's own rule regulating its membership, and since the applicable rule was adopted on the authority of now G. L. 1956, §17-12-1, failure to comply with the rule is a violation of the statute. Any purported statutory action, he argues, must be ineffective and a nullity, citing *Newman* v. *Millspaugh,* 9 App. Div.2d 715 (N.Y.).

We have no quarrel with the principle enunciated in the authority cited, but it is not applicable here for the reason that we cannot accept the premise that the Democratic state committee is not composed in accordance with its rule.

Article I, sec. 1 of the Democratic state committee rules provides as follows:

> "The affairs of the Democratic Party of Rhode Island shall be directed by a committee known as the 'Democratic State Committee,' consisting of two members, one woman and one man from each General Assembly Representative District; said members shall be elected in the primary held to nominate a candidate for Governor, and they shall hold office until their successors are elected and qualified."

Pursuant to the foregoing, the present membership of the Democratic state committee was elected in that party's primary held on September 17, 1964 and serves until a new committee is elected in the primary to be held September 13, 1966.

However, with the passage of P. L. 1966, chap. 116, the house of representatives was radically reapportioned. See *Sweeney* v. *Notte,* 95 R. I. 68. Numerous new representative districts were created and most, if not all, of the districts from which the present members of the Democratic state committee were elected were obliterated. The act became effective May 6, 1966 and sec. 29 thereof provides

in part "that the provisions hereof shall first be effective in connection with elections to be held on or subsequent to the first day of September, 1966 * * *."

Seizing upon this language, plaintiff argues that since the endorsement of primary candidates is an integral part of the primary and the primary an integral part of the general election, the membership of the state committee, to be valid, must come from the newly-structured representative districts.

This is a non sequitur. Members of the state committee are elected at the party primary in which candidates for public office are nominated. Since the endorsement of those seeking nomination must necessarily precede the primary, the state committee at the time of endorsement will necessarily be composed of members elected at the previous primary.

The general assembly recognized this and out of an abundance of caution, although in our opinion unnecessarily, provided by sec. 25 of said chapter 116 that nothing contained in said chapter should be construed so as to cut short the tenure of those state committee members presently serving.

It should be borne in mind that the members of the state committee, although elected from representative districts, are not concerned with the endorsement of candidates for the house of representatives. We are not here confronted with two committee members, a man and a woman, elected from a district now abolished acting with relation to a newly created district. Rather, the membership of the state committee, acting pursuant to G. L. 1956, §17-12-4, as amended *supra*, endorse candidates for state-wide offices and representatives in congress. Furthermore, the cited section expressly limits the right of congressional endorsements to such members of the state committee as reside within the congressional district under consideration.

We hold, therefore, that the men and women elected to the Democratic state committee in the party primary held September 17, 1964 from the representative districts as they then existed, presently constitute the lawful membership of the Democratic state committee and will continue to do so until their successors are elected from the newly-apportioned districts at the party primary to be held September 13, 1966.

Be that as it may, however, plaintiff reminds us that the representative districts from which the present members of the committee were elected in 1964 are the same districts which this court declared to be improperly apportioned in *Sweeney* v. *Notte, supra.* This circumstance is of decisive significance, plaintiff argues, for the reason that a malapportioned committee cannot make a valid endorsement of primary candidates, citing *Rice* v. *Elmore,* 165 F.2d 387, *United States* v. *Classic,* 313 U. S. 299, *Smith* v. *Allwright,* 321 U. S. 649, and *Fisher* v. *Taylor,* 210 Ark. 380.

The holding in the cited cases is to the effect that when a state permits political party committees, or officials, to exercise a portion of the state's sovereignty in connection with elections there must be conformity with the guarantees of the federal constitution. It is his position that malapportionment of a political committee runs afoul of the equal protection clause of article XIV of amendments to the United States constitution as laid down in *Baker* v. *Carr,* 369 U. S. 186, *Reynolds* v. *Sims,* 377 U. S. 533, *Sweeney* v. *Notte, supra,* and others when that committee attempts to regulate the electoral process of the state pursuant to authority vested in said committee by the legislature of the state. *Rice* v. *Elmore, United States* v. *Classic, supra.* Again we are in accord with the basic principle of the cases cited and relied upon by plaintiff. The force of his argument, however, presupposes that the endorsement of primary candidates is so much an integral part of the electoral process

in this state as to fall within the principle relied upon. We are not persuaded that this is so.

In all of the cases cited and upon which plaintiff relies, the effect of the objectionable committee action, or that of the party officials in question, was either to deprive some electors of the right to vote in their party's primary or to debase the vote of some electors participating in the choice of party nominees. In reaching their decisions the courts stressed the fact that a party primary is the first step in and an integral part of the general election. No such significant factor is present here.

Whenever there is an exercise of state sovereignty by a purported majority, equal protection of the law requires that said majority be in fact a representative majority of the electorate affected. While it may be argued that committee endorsement of a primary candidate made pursuant to §17-12-4, as amended *supra*, confers a theoretical advantage on a candidate so endorsed, it cannot be argued that such endorsement deprives any voter, otherwise qualified to vote in the party primary, from participating equally with all other voters in choosing the party's nominees. In short, it is the action of the majority as expressed by their votes at the polls which makes the determination that is governed by the principle of "one man, one vote."

No case has been called to our attention, nor has our independent research discovered any, where the principle laid down in *Baker* v. *Carr, supra,* has been extended so as to govern those circumstances with which we are confronted here. We perceive no sound reason on which to predicate such an extension.

For the foregoing reasons the plaintiff's appeal is denied and, as heretofore decided in a decision filed August 2, 1966,

the judgment of the superior court is affirmed and the case is remitted to the superior court for further proceedings.

*Eugene G. Gallant,* for plaintiff.

*J. Joseph Nugent,* Attorney General, *Joseph L. Breen,* Special Assistant Attorney General, for defendant.