David **FAHEY** and Eileen E. Carney

v.

**Francis J. DARIGAN.**

**Civ. A. No. 750151.**

United States District Court,
D. Rhode Island.

Dec. 12, 1975.

Anthony J. Bucci, Providence, R. I., for plaintiffs.

Jordan Stanzler and Milton Stanzler, Providence, R. I., for defendant.

Malcolm Farmer, III, Hinckley, Allen, Salisbury & Parsons, Herbert F. DeSimone, DeSimone, DelSesto & DelSesto, Providence, R. I., amicus curiae.

## OPINION

PETTINE, Chief Judge.

Plaintiffs in this action for declaratory and injunctive relief are two residents and voters registered in the Democratic Party in the Ninth Ward of the City of Providence. The defendant is the Chairman of the Democratic Committee for the City of Providence ("City Committee").

The Democratic Party structure for the City of Providence is organized on two levels into ward and city committees. The City of Providence is divided into thirteen wards. *See* R.I.G.L. §§ 17–11–1, 17–12–10. In the Democratic Party primary held once every four years, the Democratic voters in each ward elect eleven persons to serve on their respective ward committees, R.I.G. L. §§ 17–12–6, 17–12–8,[1] and on the City

Committee generally. The City Committee consists of the committee members of the thirteen wards, R.I.G.L. § 17–12–7,[2] and up to three officers from outside the elected membership who may be chosen from the ranks of the party's city membership generally. R.I.G.L. § 17–12–9.[3] Pursuant to R.I.G.L. § 17–12–9, all of the ward committee members are required to meet in January of every odd-numbered year to organize the City Committee and elect its officers.

The last Democratic Party primary in the City of Providence was held on September 10, 1974. Plaintiff Carney voted in that primary and participated in the election of committee members for the Ninth Ward. Plaintiff Fahey was one of those elected to serve on the Ninth Ward and Providence City committees. He is now serving as chairman of the Ninth Ward Committee. In January 1975, the thirteen ward committees which were elected the previous September met together to organize the City Committee and elected defendant Dari-

---

1. R.I.G.L. § 17–12–6, as reenacted in 1969, provides:

"17–12–6. Election of town and ward committees.—

The party voters of each political party in each ward of each of the cities of the state shall, biennially, in every even year, at the primary election held to nominate party candidates, elect a ward committee for each such ward, provided, however, that the ward committee in the city of Providence shall be elected quadrennially, and the party voters of each political party in each of the towns of the state shall biennially at said primary election elect a town committee for such town."

R.I.G.L. § 17–12–8 provides:

"17–12–8. Qualifications and terms of committee members.—

No member of a ward, town or district committee shall hold or continue to hold membership on such ward, town or district committee, unless he shall be a qualified elector of said ward, town or district.

Except as herein otherwise specifically provided, ward, district, town and city committees shall hold office, respectively, from the date of their election until the next election of such committees and thereafter until their successors shall have been duly elected, qualified and organized."

2. R.I.G.L. § 17–12–7 in pertinent part provides:

"17–12–7. Composition of city and district committees—Appointment.—

The members of the several ward committees, in each city of the same political party shall constitute the city committee of such political party for that city."

3. R.I.G.L. § 17–12–9 provides:

"17–12–9. Organization of city, town and district committees—Officers—Lists of officers and members.—

All city, town and district committees shall organize biennially in the month of January in every odd year.

Each city committee organized under this section may elect not exceeding three (3) officers outside its membership from among the voters of the same political party in said city, and such officers shall, by virtue of their election, become members of the city committee and shall hold office until the next organization meeting of said committee.

Each city committee, each town committee and each district committee, within ten (10) days, after its organization, shall file with the secretary of state and with the local board, a list of its officers and members."

gan to the post of Chairman of the City Committee.

On May 9, 1975, the Rhode Island General Assembly passed a bill affecting the composition of the Providence ward and City Committees and giving new powers of appointment to the chairmen of the Democratic and Republican Party Committees for the City of Providence. The act, designated "H 6371" and designed to supercede the present R.I.G.L. § 17–12–6, see note 1, supra, took effect on May 19, 1975, and provides:

"Section 1. Section 17–12–6 of the general laws in chapter 17–12 entitled 'Party committees and conventions' is hereby amended to read as follows: 17–12–6. Election of town and ward committees.—The party voters of each political party in each ward of each of the cities of the state shall, biennially, in every even year, at the primary election held to nominate party candidates, elect a ward committee for each such ward, provided, however, that the ward committees in the City of Providence shall each consist of nineteen (19) members and shall be elected quadrennially, and the party voters of each political party in each of the towns of the state shall biennially at said primary election elect a town committee for such town.

Sec. 2. The Chairman of the city committee of each political party forthwith upon the passage of this act shall appoint such number of members to each ward committee as may be necessary in order to carry out the provisions of section 1 hereof. Such ward committee members, so appointed shall hold office until the primary election in 1978 and thereafter until their successors shall have been duly elected, qualified and organized.

Sec. 3. This act shall take effect upon its passage."

A comparison of H 6371 ad R.I.G.L. § 17–12–6 reveals that all changes made in § 17–12–6 by the new act pertain to the composition of the ward committees of the Democratic and Republican parties of the City of Providence. Pursuant to section 1 of H 6371, the size of each of the ward committees, in the City of Providence alone, is for the first time set by statute—at nineteen committee members per ward. Section 2 of H 6371 requires the chairman of the City Committee for each political party, upon passage of the Act (see H 6371, § 3), to appoint such additional members to each of that party's ward committees as to bring the committees' size up to the full complement of nineteen per ward until the next primary election is held in 1978. As a consequence, defendant Darigan is empowered and required by H 6371 to appoint eight new members to each of the thirteen ward committees to hold office until the 1978 Democratic primary. This in turn will cause the City Committee membership to be increased from its present 143 to 247 members. R.I.G.L. § 17–12–7. See note 2, supra.

The plaintiffs challenge the constitutionality of H 6371, arguing, in essence, that, first, insofar as the Democratic ward and City committees perform a "public" function, H 6371 fails to comport with the "one person, one vote" principle enunciated in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L. Ed.2d 506 (1964), without furthering a compelling state interest, and thereby violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and, second, insofar as these committees perform a purely "private" political function, H 6371 impermissibly interferes with the internal affairs of a political party without serving a compelling state interest and thereby violates the plaintiffs' associational rights protected by the First and Fourteenth Amendments to the U. S. Constitution. See, e. g., Storer v. Brown, 415 U.S. 724, 729–730, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L. Ed.2d 247 (1968). Plaintiffs seek a declaration that H 6371 as it applies to the City of Providence is unconstitutional and an injunction restraining defendant Darigan from making the addi-

tional 104 appointments required by the Act.[4] The defendant's Republican counterpart, Roland A. Dumont, seeks to avoid the mandate of H 6371 and has filed a brief as *amicus curiae* which essentially adopts plaintiffs' legal arguments as recited above.

The action having been brought pursuant to 42 U.S.C. § 1983, jurisdiction is conferred upon the Court, sitting as a single judge, by 28 U.S.C. §§ 1343, 2201, 2202. The action does not require the convening of a three-judge panel under 28 U.S.C. § 2281, since plaintiffs' challenge to H 6371 relates only to its application to the City of Providence, and is not brought against a "state officer" within the meaning of 28 U.S.C. § 2281 to enjoin the operation of a statute of statewide applicability. *Board of Regents v. New Left Education Project*, 404 U.S. 541, 542, 92 S.Ct. 652, 30 L. Ed.2d 697 (1972); *Moody v. Flowers*, 387 U.S. 97, 101–103, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967); *Souza v. Travisono*, 498 F.2d 1120, 1121–1122 (1st Cir. 1974).

### I

In order to assess plaintiffs' argument that H 6371 violates the "one person, one vote" requirement of the Equal Protection Clause, we must first determine that principle's applicability to the instant case. It is elementary that the provisions of the Equal Protection Clause of the Fourteenth Amend-

ment relate only to "state", as opposed to "private", action. It equally cannot be disputed that state control of the nomination processes governing which candidates for public office will appear on the ballot in a general election constitutes "state action".[5] "All procedures used by a State as an integral part of the election process must pass muster against the charges of discrimination or of abridgment of the right to vote." *Moore v. Ogilvie*, 394 U.S. 814, 819, 89 S.Ct. 1493, 1496, 23 L.Ed.2d 1 (1969) (citations omitted). Similarly, in *Gray v. Sanders*, 372 U.S. 368, 374, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963), the Supreme Court adopted the following language of *Chapman v. King*, 154 F.2d 460, 464 (5th Cir. 1946, *cert. denied*, 327 U.S. 800, 66 S.Ct. 905, 90 L.Ed. 1025:

> "[Where] the State . . . collaborates in the conduct of the [party] primary, and puts its power behind the rules of the party [, i]t adopts the primary as a part of the public election machinery."

*See, e. g., Smith v. Allwright*, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944); *Seergy v. Kings County Republican County Committee*, 459 F.2d 308, 313 (2d Cir. 1972). *See also Lynch v. Torquato*, 343 F.2d 370, 372 (3d Cir. 1965). *Cf. Bunting v. Board of Canvassers and Registration of the City of Cranston*, 90 R.I. 63, 153 A.2d 560, 562–563 (1959). Such processes must comport with the Equal Protection Clause, which, with ex-

---

4. Plaintiffs also contend that H 6371 conflicts with other provisions of state law, which, in view of my decision, need not be discussed herein.

5. "State action" has been found in rules governing nomination by party primary, *c. g., Gray v. Sanders*, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963); or nomination by the independent candidate's collection of signatures on a nominating petition, *e. g., Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971). It has also been found in nomination by party convention, *e. g., Georgia v. National Democratic Party*, 145 U.S.App.D.C. 102, 447 F.2d 1271 (1971), *cert. denied*, 404 U.S. 858, 92 S.Ct. 109, 30

L.Ed.2d 101, *but see Ripon Society, Inc. v. National Republican Party*, 525 F.2d 567 (D.C.Cir. 1975) (en banc) (dictum), *cert. denied*, —— U.S. ——, 96 S.Ct. 1147, 47 L. Ed.2d 341 (1975). The question "Whether the decisions of a National Political Party in the area of delegate selection constitute state or governmental action" was reserved by the Supreme Court in *Cousins v. Wigoda*, 419 U.S. 477, 483, 95 S.Ct. 541, 42 L.Ed.2d 595 n. 4 (1975), but is in no way implicated in the instant challenge, which relates solely to nomination procedures mandated by state statute. *See Ripon Society, supra* at 598–600, nn. 3–8 (Tamm, J., concurring in result). *See generally* Note, Developments in the Law —Elections, 88 Harv.L.Rev. 1111, 1155–1163

ceptions not here applicable,[6] requires compliance with the "one person, one vote" principle. *Reynolds v. Sims, supra; Gray v. Sanders, supra; Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L. Ed.2d 663 (1962). *See also Gallant v. LaFrance*, 101 R.I. 299, 222 A.2d 567, 570 (1967) (dictum).

■ Thus our task is to determine to what extent, if any, the City and ward committees perform a "public" function so as to require adherence to the "one person, one vote" rule. We start with the proposition that the Equal Protection Clause is not implicated in the mere endorsement of a candidate as the party's pick to succeed in a primary election. It is immaterial whether such an endorsement confers a "theoretical" advantage upon the endorsed candidate, *Gallant v. LaFrance, supra*, 222 A.2d at 570, or, as is urged through a statistical showing by the amicus, makes the endorsed candidate's nomination a virtual certainty. In either event, the party primary is still held, and it is left to the voters to accept or reject the endorsing committee's choice.

> "[I]t cannot be argued that such endorsement deprives any voter, otherwise qualified to vote in the party primary, from participating equally with all other voters in choosing the party's

nominees. In short, it is the action of the majority as expressed by their votes at the polls which makes the determination that is governed by the principle of 'one man, one vote'." *Gallant v. LaFrance, supra* 222 A.2d at 570–571.

In a few extraordinary situations, however, the statutory scheme at issue provides that the selection of the party's nominees for public city offices shall be made by the City Committee rather than by popular vote. The City Committee is charged to select the party's nominee, by majority vote of *its* members, where there has been a tie vote in the primary, R.I.G.L. § 17–15–33, or where the regularly elected nominee does not run in the general or special election, due to withdrawal or death, R.I.G.L. §§ 17–17–4, 17-17-6, 17–17–7. *See also* R.I.G.L. § 17–15–38.

■ In making an inquiry similar to the one at bar in *Seergy v. Kings County Republican County Committee, supra,* the Second Circuit stated:

> "The state is obligated to insure that the votes of constituents will be given equal weight only when the voting, whether directly by them or indirectly through their committeemen, is pursuant to 'the decision of the *government*

---

6. The "one person, one vote" principle applies to elections of officials who exercise formal governmental powers in a representative capacity, *see Hadley v. Junior College District*, 397 U.S. 50, 54–56, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970), but does not govern the selection of "special purpose" assemblies whose decisions "disproportionately affect different groups," *Salyer Land Co. v. Tulare Lake Basin Water Storage District*, 410 U.S. 719, 728, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973), or the selection of officials not intended to serve in a representative role, such as judges, *Wells v. Edwards*, 347 F. Supp. 453, 455 (M.D.La.1972) (three-judge court), *aff'd mem.*, 409 U.S. 1095, 93 S.Ct. 904, 34 L.Ed.2d 679 (1973). *Cf. Hicks v. Miranda*, 422 U.S. 332, 344–345, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). *See generally, Ripon Society, supra* 525 F.2d at 579–580; Note, *supra,* 88 Harv.L.Rev. at 1182–1187. In addition, in *Ripon Society, supra,* the D.C. Circuit concluded that, although the "one per-son, one vote" principle was otherwise applicable to the selection of delegates to a national party's presidential nominating convention (assuming *arguendo* that the convention activities involved "state action"), it was outweighed by the Republican Party members' First Amendment right of association, also implicated by the method of delegate selection. No such collision of constitutional principles exists here, since the alleged deviation from the "one person, one vote" rule is required by statute and not by party choice. *Cf. Bullock v. Carter*, 405 U. S. 134, 140–141 n. 16, 92 S.Ct. 849, 31 L. Ed.2d 92 (1972). As to the deviation permitted in *Bode v. National Democratic Party*, 146 U.S.App.D.C. 373, 452 F.2d 1302 (1971), *cert. denied*, 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668, the Court agrees with and adopts the reasoning of the Second Circuit, expressed in *Seergy, supra* at 315 n. 8, that *Bode* likewise does not control the instant inquiry.

to have citizens participate individually by ballot in the selection of certain people who carry out *governmental* functions,' *Hadley v. Junior College District*, 397 U.S. 50, 54, 90 S.Ct. 791, 794, 25 L.Ed.2d 45 (1970) (emphasis added).

\*　　\*　　\*　　\*　　\*　　\*

Applying these principles here, we hold that the Equal Protection Clause does not . . . [apply to the] defendants . . . in the performance of their major duty and function as committeemen, which is to conduct the internal management and business of the county committee. . . . In those rare instances where committeemen perform public electoral functions (e. g., the nomination of candidates to fill vacancies or to run in special elections, or the giving or [*sic*] consent to candidacies by non-members of the party), however, the county committee is required by the Equal Protection Clause to apply the 'one-man, one-vote' principle, since in such cases it is unquestionably playing an integral part in the state scheme of public elections. See *Maxey v. Washington State Democratic Committee*, 319 F. Supp. 673, 679 (W.D.Wash.1970).

\*　　\*　　\*　　\*　　\*　　\*

The Court has recently reiterated that the rule of 'one-man, one-vote' need not be applied with mathematical precision, but that any 'deviations from population equality must be justified by legitimate state considerations.' *Abate v. Mundt*, 403 U.S. 182, 185, 91 S.Ct. 1904, 1906, 29 L.Ed.2d 399 (1971); *Swann v. Adams*, 385 U. S. 440, 444, 87 S.Ct. 569, 17 L.Ed.2d 501 (1967). . . . Since deviations from the principle of 'one-man, one-vote' can stand only where they 'occur in recognizing certain factors that are free from any taint of arbitrariness,' *Roman v. Sincock*, 377 U.S. 695, 710, 84 S.Ct. 1449, 1458, 12 L. Ed.2d 620 (1964), it follows that the second alternative allowed by § 12 of the Election Law, as implemented by

Art. 1, § 1 of the Kings County Republican County Committee Rules, is invalid as applied to those rare instances where the committee performs a public electoral function." *Id.* at 312–315 (footnotes omitted).

In sum, the "one person, one vote" rule as analyzed in *Seergy* would apply in the instant case only if and when one of the extraordinary situations requiring committee selection of a party's nominee for public, *i. e.*, citywide, office were to occur. In such a case, the Equal Protection Clause would require that the party committee effecting the nomination be constituted substantially in accordance with the "one person, one vote" rule. *But see Lynch v. Torquato, supra* at 372 (dictum). Any deviation from this rule that is more than a minor variation "based on legitimate considerations incident to the effectuation of a rational state policy," *Reynolds v. Sims, supra*, 377 U.S. at 579, 84 S.Ct. at 1391, would require the invalidation of the committee's nomination. *Cf. Gaffney v. Cummings*, 412 U.S. 735, 740–745, 93 S.Ct. 2321, 37 L.Ed.2d 298 (1973).

■ To this proposition the defendant interposes two objections. First, he argues that the committees as expanded pursuant to H 6371 would not violate the "one person, one vote" rule. *See* note 8, *infra*. Second, he asserts that the possibility that the expanded City Committee will ever be required to perform a "public" function prior to its replacement by a fully elected membership in the 1978 primary is so remote and hypothetical as to render the instant challenge nonjusticiable for failure to present a "case or controversy" as required by Article III of the U.S. Constitution and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

Of the two leading cases which most closely parallel the instant challenge, the defendant's second contention was accepted by the Third Circuit in *Lynch v. Torquato, supra*, but implicitly rejected by the Second Circuit in *Seergy, supra* wherein the court, after citing *Lynch* to support its analysis, nonetheless conclud-

ed that plaintiffs were entitled to declaratory relief. This Court finds itself in substantial agreement with the Third Circuit's analysis in *Lynch:*

"For even if it should be unconstitutional for party leaders chosen in an undemocratic manner to make emergency designations of party nominees for governmental office, it does not follow that these party leaders are constitutionally disqualified from performing their many and varied normal functions of administering the party business. A party chairman may perform these functions throughout his term of office without ever having occasion to select a substitute nominee for governmental office.

\*　　\*　　\*　　\*　　\*　　\*

In our view the only relief to which the plaintiffs might have an arguable constitutional claim would be an order restraining a County Chairman chosen in an undemocratic way from making party nominations for elective public offices. But it is not alleged that the County Chairman has made any such nomination or that the unusual situation has arisen in which he is authorized to do so. Thus, neither a violation of the plaintiffs' rights as voters nor the imminent prospect of such a violation appears in this case. Indeed, this lawsuit appears to be an effort of dissidents to wrest control of ordinary party affairs from present leadership rather than an attempt to vindicate the plaintiffs' right to share equitably in the choice of nominees for public office in some emergency situation which may never arise. Thus, an anticipatory solution of a possible future controversy of constitutional dimensions is urged upon us as a justification for judicial intervention in a present controversy which involves no

actual or imminently threatened violation of constitutional rights."

*Id.* at 372–373. *See also Todd v. Oklahoma State Democratic Central Committee,* 361 F.Supp. 491, 495–497 (W. D.Okla.1973) (three-judge court).

The Third Circuit's analysis in *Lynch* is equally applicable to both *Seergy* and the case at bar. Like the Third Circuit, the Second Circuit in *Seergy* recognized that, since the only "public" functioning of the party committee at issue was restricted to rare instances of "post-primary emergency nominations," *Lynch, supra* at 372, a declaration of the unconstitutionality of the Committee's composition was proper only to the extent that such nomination by party committee occurred. *Seergy, supra* at 315. Although the issue was not directly addressed in *Seergy,* a close reading of that decision strongly suggests that there was no allegation that such an invalid nomination procedure had taken or was about to take place. *Compare Grimes v. Commonwealth of Kentucky,* 362 F.2d 1359 (6th Cir. 1972). The argument for nonjusticiability is even stronger here than in either *Lynch* or *Seergy,* since the alleged debasement of the "one person, one vote" principle will be cured by the 1978 primary election, at which time all ward committee members will again be selected by popular vote. H 6371, § 1. Thus it is extremely likely that the expanded committees here in dispute will *never* be called upon to perform a "public" function requiring conformity with the "one person, one vote" rule.[7]

■ In concluding that the instant challenge of H 6371 under the Equal Protection Clause is not "ripe" for resolution, the Court does not decide wheth-

---

7. As the defendant notes in his Supplemental Memorandum in support of his motion to dismiss at page 6, the next primary will not occur until 1978, so that there is at most only one time—*i. e.,* between the 1978 primary to elect their successors and the 1978

general election—when the party committees would be called upon, if at all, to make an emergency post-primary nomination, before they are replaced by ward and City committees composed solely of elected members.

er the expansion of the elected committees by the appointment of eight new members per ward contravenes the "one person, one vote" principle.[8]

## II

■ Plaintiffs also challenge the constitutionality of H 6371 on First Amendment associational grounds insofar as the Act purports to regulate the composition of the ward and City committees in their handling of purely internal party affairs. Much has been written by the United States Supreme Court on the general proposition that a political party's management of its internal affairs is protected by its members' First Amendment freedom of association:

"[S]ubstantial burdens on the right to vote or to associate for political purposes are constitutionally suspect and invalid under the First and Fourteenth Amendments and under the Equal Protection Clause unless essential to serve a compelling state interest . . . [However, i]t has never been suggested that the *Williams-Kramer* [*v. Union Free School District*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969)]–*Dunn* [*v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972)] rule automatically invalidates every substantial restriction on the right to vote or to associate . . . [A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes. In any event, the States have evolved comprehensive, and in many respects complex, election codes regulating in most substantial ways . . . the time, place, and manner of holding primary and general elections, the registration and qualifications of voters, and the selection and qualification of candidates.

It is very unlikely that all or even a large portion of the state election laws would fail to pass muster under

---

8. At first blush it seemed clear that the required addition of eight new committee members per ward by appointment of the City Party Chairman would not conform to the "one person, one vote" rule, since it would operate to give the Chairman the sole power to seat 42% of the City Committee, as expanded, while those chosen by the electorate would be reduced to only 58% of the Committee. As the defendant points out, however, the mere dilution of the relative influence of one's vote, through political gerrymandering, e. g., *Gaffney v. Cummings, supra* 412 U.S. at 753–754, 93 S.Ct. 2321, or annexation of new voting districts, cf. *City of Richmond v. United States*, 422 U.S. 358, 95 S.Ct. 2296, 45 L.Ed.2d 245 (1975) (decided under § 5 of the 1965 Voting Rights Act, 42 U.S.C. § 1973c), does not violate the "one person, one vote" rule so long as that one vote is still given the same weight as every other vote cast. *Gaffney v. Cummings, supra; Reynolds v. Sims, supra* 377 U.S. at 579, 84 S.Ct. 1362. Cf. *Gomillion v. Lightfoot*, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960); U. S. Constitution, Amendments XV, XIX. It is therefore critical to a resolution of this issue to determine the Party Chairman's role in making the appointments required by H 6371, § 2. Is he acting on his own behalf, thereby impermissibly making his "vote" many times weightier than that of plaintiff Carney's? Or, is he giving effect to the "one person, one vote" rule by acting as plaintiff Carney's representative, since as Chairman he was selected in accord with the "one person, one vote" rule by a majority of ward committee members who were likewise elected by a majority of their respective ward's party electorate? See *Restivo v. Conservative Party of the State of New York*, 391 F. Supp. 813, 819 (S.D.N.Y.1975).

The latter position, taken in context, may be criticized as enabling Chairman Darigan to transform a bare City Committee majority of 51% (i. e., sufficient to elect him to the post of Chairman) into a solid Darigan majority of 72% (i. e., 51% of the original committee members, who would now constitute 58% of the total committee membership, plus 100% of the new Darigan appointees, who would comprise 42% of the total expanded membership). The prospect of such a pyramiding tyranny of the majority in a representative democracy may well be the proper subject of criticism and debate in other forums, but, short of a finding that the "one person, one vote" rule requires proportional representation of the electorate, a proposition neither urged herein nor supported by past legal precedent, it is not vulnerable to a challenge under the Equal Protection Clause.

our cases; and the rule fashioned by the Court to pass on constitutional challenges to specific provisions of election laws provides no litmus-paper test for separating those restrictions that are valid from those that are invidious under the Equal Protection Clause. The rule is not self-executing and is no substitute for the hard judgments that must be made. Decision in this context as in others, is very much a 'matter of degree,' *Dunn v. Blumstein, supra,* 405 U.S. at 348, 92 S.Ct. at 1006, very much a matter of 'consider[ing] the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification.' *Williams v. Rhodes, supra,* 393 U.S. at 30, 89 S.Ct. at 10 [21 L. Ed.2d 24]; *Dunn v. Blumstein, supra,* 405 U.S. at 335, 92 S.Ct. at 999. What the result of this process will be in any specific case may be very difficult to predict with great assurance."

*Storer v. Brown,* 415 U.S. 724, 729–730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974).

After stating this standard, the Court in *Storer* proceeded to examine its past decisions interpreting the proper boundaries of the states' legitimate interests underlying regulation of political party processes. *Id.* at 730–737, 94 S.Ct. 1274. Although, as the Supreme Court admonished, each case must turn on its own facts, the inquiry running throughout the Court's analysis, stated broadly, was: is the challenged provision an essential part of an overall statutory scheme designed to maintain the integrity and stability of the political process? Before a court is required to make this inquiry, however, the challenger must first establish that the challenged statute does in fact impose a substantial burden upon associational rights. *American Party of Texas v. White,* 415 U.S. 767, 790, 94 S.Ct. 1296, 39 L. Ed.2d 744 (1974). *See also Yale v. Curvin,* 345 F.Supp. 447, 450 (D.R.I.1972) (three-judge court).

In *Cousins v. Wigoda,* 419 U.S. 477, 95 S.Ct. 541, 42 L.Ed.2d 595 (1975), the Supreme Court considered state regulation of the composition of a National Democratic Party convention in the context of a First Amendment challenge. The Supreme Court there examined a state court order, enjoining the seating of the Cousins slate of Illinois delegates at the National Democratic Party Presidential Convention, which was claimed to be an impermissible interference with the party members' associational rights. It is important to note what was *not* at issue in *Cousins*: there was no dispute that the Illinois court injunction constituted a " 'significant interference' with protected rights of political association," *id.* at 488, 95 S.Ct. at 548 (citations omitted), requiring strict judicial scrutiny under the test outlined above, *id.* at 489, 95 S.Ct. 541. The contested issue in *Cousins* was whether the state's interest in preserving the integrity of its electoral process to select party delegates was compelling in relation to the national party's interest in determining qualifications of delegates to its presidential convention. The emphasis placed by the Court on the national characteristics of the party interests at issue in *Cousins, id.* at 487–491, 95 S.Ct. 541, indicates that a different balance may be struck when state interests are pitted against purely state or local party interests, but, despite Justice Powell's disclaimer at 497, n. \*, 95 S.Ct. 541 (concurring and dissenting in part), does not signify that the nature of the inquiry made in *Cousins* should similarly be limited:

"Although *Cousins'* holding is limited to conflicts between national party rules and state law, the decision is also relevant in resolving conflicts between state parties and state law. The balancing test employed in *Cousins* rests on a finding that the alternate delegates had an associational interest in participating in the party's activities. Moreover, the Court's language indicates that the party itself had an associational interest in deciding who could participate in its activi-

ties, which was infringed by the lower court's injunction. Indeed, the opinion suggests that the party's right to associate may even protect a more general right of group self-governance. There seems to be no reason to limit protection of these associational interests to national parties or to delegates to national conventions, and nothing in *Cousins* suggests that the Court's interpretation of the scope of the freedom to associate should not extend to state or local parties." Note: Development in the Law—Elections, 88 Harv.L.Rev. 1111, 1210 (1975) (footnotes omitted).

Relying upon the *Cousins* analysis for guidance, the Court now examines the alleged intrusions worked by H 6371.

In this case the plaintiffs take issue with two distinct requirements of H 6371: first, its establishment of a statutory size for Providence ward and City committees (H 6371, § 1); and second, its requirement that any such newly created seats be filled by interim appointment until the next election is held in 1978 (H 6371, § 2). We must view implementation of these requirements in the context of the present composition of these party committees, whose membership is presently required by statute to be elected, R.I.G.L. § 17–12–6, but whose size is set by party rule, at eleven per ward. Thus H 6371 requires that the committees be enlarged by appointment to almost twice their present size. It is quite likely that the appointment process will result in a substantial redistribution of strength among existing factions on the committees, *see* note 8,

*supra,* and will no longer accurately reflect the choice made by the party's electorate in the September 1974 primary.

▮ Setting aside for the moment the broader question as to whether the State has *any* right to affix the committees' size by statute, we address the question of the State's right to require that the present committees be increased in size by the appointment process, H 6371, § 2, in derogation of the party electorate's choice made in the last primary election. By essentially revising the outcome of the 1974 Democratic primary election, section 2 of H 6371 without question works a subantial burden on the party members' right to associate for political purposes. *Cf. Cousins v. Wigoda, supra.*

No compelling state interest, such as the need to remedy an existing malapportionment, *see, e. g., Aiello v. La-France,* C.A. No. 70–1814 (Prov.Superior Ct. 6/30/70), has been raised to support this statutory mandate; indeed, it must be noted that implementation of section 2 of the Act is also in conflict with the State's more basic requirement, expressed in R.I.G.L. § 17–12–6 and as amended by H 6371, § 1, that these committee members be elected by popular vote of the party electorate. The only interest asserted by the defendant[9] is that H 6371 was enacted to "enable the Democratic City Committee to comply with the spirit and intent of the policy of the [National] Democratic Party" as expressed in the National Democratic Party's ("NDP") Charter of December 7, 1974 (Affidavit of Francis J. Dari-

---

9. Where a fundamental constitutional right is involved, the Court will not speculate as to what, if any, state interests may be furthered by the challenged provision. *Compare, e. g., Williams v. Rhodes, supra* 393 U.S. at 31, 89 S.Ct. 5, *with McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). *Cf. Women's Liberation Union of Rhode Island, Inc. v. Israel,* 379 F.Supp. 44, 49 (D.R.I.1974), *aff'd,* 512 F.2d 106 (1st Cir. 1975).

Although not required to do so, *cf.* 28 U.S.C. § 2281, the Court on its own initiative advised the Rhode Island Attorney General of

the pendency of this action challenging the constitutionality of a state statute and invited his intervention in the hope that he could enlighten the Court as to the state's purpose in enacting H 6371. The Attorney General, viewing the matter as one purely of local impact and concern, has declined to intervene. I point this out merely to explain the Court's need to rely solely on a non-government official's characterization of the state interest underlying H 6371 and not in any respect to question the Attorney General's position. *See* note 12, *infra.*

gan). It is not contended that failure to comply with the NDP Charter and affirmative action program will in any way result in a violation of state or federal constitutional or statutory law or otherwise undermine the integrity and stability of the state political process. The Court fails to see how this purpose, however salutary its implementation may be, would constitute a *state* interest, let alone a compelling one. Furthermore, H 6371 can hardly be said to accomplish the above cited purpose by the least restrictive means, as defendant virtually concedes.[10] H 6371 may enable the defendant to comply with the NDP Charter, but it neither requires nor recommends that he do so, nor does it exclude the Republican City Committee from its terms, as would be consonant with its alleged purpose. Although these less drastic alternatives may themselves be of questionable constitutionality, they nonetheless illustrate, as do the other defects recited by plaintiffs and amicus, how poorly H 6371 serves the purpose asserted by the defendant. In consequence, I conclude that section 2 of H 6371 cannot withstand plaintiffs' First Amendment Challenge.[11]

We turn now to the plaintiffs' attack on section 1 of H 6371 insofar as it affixes a statutory size for ward committees of the City of Providence. The plaintiffs do not dispute the State's right to require that ward committee members be elected by popular vote, or that such elections take place once in every four years for Providence while biennially elsewhere in the State.

The first issue to be addressed is whether the establishment of ward committee size by statute under the circumstances constitutes a substantial burden upon the party members' associational

rights. *American Party of Texas v. White, supra* 415 U.S. at 790, 94 S.Ct. 1296. An examination of Supreme Court cases in which a substantial burden has been found discloses government intrusions which often go to the heart of a political association's *raison d'être.* This is not a case where a political party is effectively denied a place on the ballot and access to the electorate, *e. g., Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *Williams v. Rhodes, supra;* or where a political association is foreclosed by statute from engaging in activities designed to further its members' political aims, *e. g., NAACP v. Button,* 371 U.S. 415, 429–431, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). *See also Cousins v. Wigoda, supra.* In contrast, all that H 6371 requires is that the respective committees increase their membership and maintain it at the statutory size. It has not been alleged that organizing or convening the expanded committees will be so unmanageable as to make effective operation impossible. On the other hand, it cannot be doubted that the required increase in the committees to almost double their present size constitutes a significant deviation from the parties' choice of optimum size which in all probability will affect the manner in which the committees fulfill their statutory and party functions.

We should not lightly dismiss, as *de minimis,* a party's choice of organizational structure even though the state interference at issue involves a mechanically applied, numerical or formal requirement. *Cf. King v. Willis,* 333 F. Supp. 670, 674–675 (D.Del.1971).

"[A] party's choice, as among various ways of governing itself, of the one which seems best calculated to strengthen the party and advance its

---

10. In his "Supplemental Memorandum" of November 13, 1975, defendant states at page 2:

"There are any number of other conceivable solutions that might have been chosen to remedy the existing problem. These solutions might seem better or wiser than the one chosen by the legislature."

11. Similarly, section 3 of H 6371 could not constitutionally be construed to require that the ward committee size be increased to nineteen per ward prior to the 1978 primary.

interests, deserve the *protection* of the Constitution . . . The express constitutional rights of speech and assembly are of slight value indeed if they do not carry with them a concomitant right of political association . . . [This] must be a right not only to form political associations but to organize and direct them in the ·way that will make them most effective.

\* \* \* \* \* \*

Last term the Court in· *Cousins v. Wigoda* placed the internal workings of a political party squarely within the protection of the First Amendment . . . If First Amendment rights are exercised when a Party determines the make-up, or perhaps even the existence, of state delegations, we think the same is true when it determines their size." *Ripon Society, Inc. v. National Republican Party,* 525 F. 2d 567, 586 (D.C.Cir.1975) (en banc), *cert. denied,* — U.S. —, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1975) (emphasis in original).

As discussed in Part I and urged by the defendant himself, the Providence ward and City committees perform a "public" function in only the rarest of circumstances. Accordingly, the Court concludes that the state intrusion at issue, which governs internal political party structure and not access to the state ballot, imposes a substantial burden upon plaintiffs' associational rights and is therefore subject to strict judicial scrutiny. *See Cousins v. Wigoda, supra; Bates v. City of Little Rock,* 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Ripon Society, Inc. v. Na-*

tional Republican Party, supra. Cf. American Party of Texas v. White, supra.*

 The Court has already considered and rejected the interest cited by the defendant to support the challenged statute. Furthermore, affixing the size of these party committees by statute has no discernible relation to the asserted interest. As a result, section 1 of H 6371, insofar as it statutorily affixes the size of ward committees for the City of Providence, is unconstitutional.[12]

12. The Court feels constrained to comment on what it perceives to be the unfortunate fact that this case ever arose in federal court at all. The defendant's inability to proffer a compelling, or indeed any, *state* interest furthered by the challenged portions of the statute is not surprising in view of the defendant's own statement that the statute was passed at his urging to further Party goals (Affidavit of Francis J. Darigan). The fact that this law suit was instituted is

itself evidence that the Chairman's objectives were opposed within his own party. Instead of subverting the public political process to private party purposes and thereby fully exposing party activities to judicial review, *cf. O'Brien v. Brown,* 409 U.S. 1, 4, 92 S.Ct. 2718, 34 L.Ed.2d 1 (1972), the party factions should have resolved their differences by intraparty politicking, as is ordinarily and properly the case.