275 A.2d 256.

ADVISORY OPINION TO THE SENATE OF THE STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS.

MARCH 18, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ADVISORY OPINION to Senate in answer to question relating to reduction or withdrawal of unexpended balances of appropriations for Department of Social Welfare and Board of Regents.

March 18, 1971

To the Honorable, the Senate of the
State of Rhode Island and
Providence Plantations

We have received from the Honorable Senate a resolution requesting, in accordance with the provisions of section 2 of article XII of amendments to the constitution of this state, our written opinion upon the following question of law:

"Can the general assembly or the budget officer, prior to the end of the fiscal year, reduce or withdraw unexpended balances of appropriations from the department of social welfare and the board of regents for education?"

It appears from the resolution by the adoption of which the Honorable Senate requested our written opinion, as aforesaid, that the request was motivated by the pendency before your honorable body of an act enumerated S 190 and entitled "An Act Making Appropriations for the Support of the State for the Fiscal Year Ending June 30, 1971." From an examination of said pending legislation, it further

appears that the act in question proposes to amend P. L. 1970, chapter 138, article I, section 1. This latter act represents the annual appropriation bill for the fiscal year commencing July 1, 1970 and ending June 30, 1971.

Further, the specific amendment proposed would reduce the general appropriation for the Board of Regents from $103,024,734 to $102,024,734 and for the Department of Social Welfare from $84,157,496 to $83,157,496 for the 1970-1971 fiscal year.

We note at the outset that correlative to the inquiry regarding the General Assembly's prerogative in the premises, the question as posited also inquires into the possible standing of the budget officer to "reduce or withdraw unexpended balances" from the general appropriations to the department concerned. The scope and nature of that officer's duties and jurisdiction are set forth in G. L. 1956 (1969 Reenactment) chapter 3 of title 35, and nothing therein either directly or by necessary implication can be construed so as to authorize the budget officer to "reduce or withdraw" from appropriations made for the departments here involved.

The question as it relates to the right of the General Assembly to repeal the appropriation bill in the manner proposed by S 190 is not so readily resolved. It is clear beyond question that the Legislature has the right to alter or amend any act by it adopted, including acts appropriating monies, unless such right is expressly or by necessary implication restrained by provisions of the constitution by the adoption of which the Legislature was itself created, or provisions of the Federal Constitution made binding on the states. *State ex rel. Board of Regents of Normal Schools* v. *Donald,* 163 Wis. 145, 157 N.W. 782; *City and County of San Francisco* v. *Beideman,* 17 Cal. 443 (1861); *Lee* v. *City of Decatur,* 233 Ala. 411, 172 So.284; *In re Continuing Appropriations,* 18 Col. 192, 32 P.272; *Unem-*

*ployment Compensation Comm'n* v. *Renner,* 59 Wyo.437, 143 P.2d 181; *McConnel* v. *Gallet,* 51 Idaho 386, 6 P.2d 143 and *Carr* v. *Frohmiller,* 47 Ariz. 430, 56 P.2d 644.

Thus, of immediate significance to the question at issue are the provisions of section 12 of article I of the constitution of this state and section 10 of article I of the Constitution of the United States. These sections expressly prohibit the General Assembly from adopting any act which has as its consequence the impairment of contracts. See *Stokes* v. *Rodman,* 5 R. I. 405 and *Morley* v. *Lake Shore and M.S.Ry.,* 146 U. S. 162, 13 S.Ct. 54, 36 L.Ed. 925 (1892). Consequently, appropriations made to the Board of Regents and to the Department of Social Welfare by the adoption of P. L. 1970, chapter 138, may now be repealed only to the extent that such appropriations have not been expended or otherwise pledged to a binding executory contract entered into by the agencies involved.

However, to what extent expenditures have been made or funds so pledged as to be constitutionally binding is a question of fact. Hence, before there can be a valid repeal by the General Assembly of funds theretofore appropriated, there must be a factual determination of what remains in the general appropriation that is subject to recoupment. Moreover, such determination requires at least two approaches. It is well settled that when the Legislature makes a general appropriation, the agency involved enters into a contract with another, and the question of whether such contract is constitutionally protected is to be determined by the terms of that contract and not by the provisions of the act of appropriation. *Keefe* v. *Clark,* 322 U. S. 393, 64 S.Ct. 1072, 88 L.Ed. 1346.

Moreover, although some states have held as in *State ex rel. Board of Regents of Normal School* v. *Donald, supra,* that the state like any individual can declare its intention to repudiate contracts, wholly or

partially executory, leaving the other party to his right of recovery for damages, states so holding have a standing statute granting their consent to be sued. We find no such general consent statute to be the law of this state. Thus, in Rhode Island, one allegedly sustaining damages as a result of this state's repudiation must seek special legislation giving the right to sue. Whether the General Assembly would grant such right in a given case is conjectural and this conceivably restricts the General Assembly from repealing an appropriation which the Board of Regents and/or the Department of Social Welfare have already allocated to a contract which, by its terms, may not constitutionally be impaired.

Furthermore, there is a conceivable problem in achieving an effective withdrawal or reduction of funds appropriated in connection with continuing appropriations so-called. See *In re Continuing Appropriations, supra.* Annual appropriations of this nature are made by reason of a standing statutory obligation on the General Assembly to make appropriations required by such statute. Significantly illustrative of this, when considering the proposed reduction of the general appropriation to the Board of Regents of $1,000,000 are the provisions of P. L. 1960, chapter 27, as amended, now §16-7-15 et seq. and cited as "Foundation Level School Support."

The act is designed to provide financial assistance by the state to all city, town and community school districts. It sets forth a formula whereby the now Board of Regents makes its determination as to the dollar amount of aid due to each community. Further, §16-7-17 provides for distributions to the communities semi-annually, payable one-half in October and one-half in the following April. The monies to be thus distributed are provided for by an annual appropriation. To effectuate this, an annual ap-

propriation is provided for by the mandate of §16-7-34 which is as follows:

> "Appropriation of funds. — The general assembly shall annually appropriate such sum as it may deem necessary to carry out the purposes of §§16-5-31 and 16-7-15 to 16-7-34, inclusive; and the state controller is hereby authorized and directed to draw his orders upon the general treasurer for the payment of such sum, or so much thereof as may be required from time to time, upon receipt by him of properly authenticated vouchers."

Consequently, when the 1970-1971 appropriation bill was enacted, the General Assembly, obligated by the standing provisions of the "Foundation Level School Support" program, included an appropriation to make possible payment to the several communities of the October 1970 and April 1971 state contributions.

Presumably the contributions due in October have been distributed and are, of course, beyond the Legislature's recall. There remains, however, the April 1971 distribution which, as the law now stands, will be made automatically.

It would seem clear that unless the applicable provisions of chapter 7 of title 16 are amended or repealed, the funds appropriated to the Board of Regents for distribution in accordance with existing provisions will be obligatory on said Board, the state controller, and the General Treasurer. It is our opinion that such obligation would not be relieved either wholly or partially by an act of the General Assembly simply amending the 1970-1971 appropriation bill so as to withdraw therefrom $1,000,000 from the total appropriation previously made to the Board of Regents.

We realize that the factual illustration pointed out may not in and by itself pose a problem when the funds appropriated pursuant to chapter 7 of title 16 are considered in light of the total general appropriation to the Board of Regents. However, short of research in which

we cannot readily engage, there is no way of determining the number and/or nature of continuing appropriations that are included in the 1970-1971 annual appropriation for either the Board of Regents or the Department of Social Welfare. It may be that their number is insignificant, but we deem it advisable to point out that an amendment to the annual appropriation bill for the fiscal year in which the amendment is made, which amendment merely reduces the total appropriation to a given department by a stated sum, may result in the department affected tailoring its expenditures of unencumbered funds in areas not contemplated by the General Assembly.

At this juncture it is both desirable and advisable to dispose of a contention advanced by the Board of Regents in an amicus curiae brief submitted by the Board with our permission. The essence of said contention is that by virtue of P. L. 1969, chapter 231, section 3 of which is now G. L. 1956, chapter 49 of title 16, as amended, which act created the Board of Regents and vested it with well defined jurisdiction, the Board of Regents is wholly autonomous in the field of education. The Board takes the further position that the annual appropriation to it provided for by §16-49-9, becomes vested in the Board when made, and cannot thereafter be reduced by the General Assembly.

We are unable to agree that the Board of Regents possesses such autonomy; rather, we think it clear that except for funds already expended, or pledged, or committed in the manner heretofore delineated, the annual appropriation made to the Board of Regents is subject to such reductions or withdrawals in the manner applicable to any other agency of the state.

Subject then to constitutional limitations heretofore pointed out and practical problems arising out of continuing appropriations, we conclude that the question pro-

pounded by Your Honors, as it relates to the General Assembly, is to be answered in the affirmative.

Respectfully submitted,

THOMAS H. ROBERTS
THOMAS J. PAOLINO
WILLIAM H. POWERS
ALFRED H. JOSLIN
THOMAS F. KELLEHER

*Edward D. Feldstein,* Amicus Curiae (brief submitted on behalf of Board of Regents).