Angelica B. GOSZ et al.

v.

Rocco A. QUATTROCCHI et al.

No. 82–267–Appeal.

Supreme Court of Rhode Island.

July 15, 1982.

William A. Gosz, Raymond Dettore, Jr., Thomas R. De Simone and Paul C. Borges, Providence, for plaintiffs.

Tillinghast, Collins & Graham, Peter J. McGinn, Normand G. Benoit, John M. Boehnert, Providence, for defendants.

OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment entered in the Superior Court declaring section 9 of P.L.1982, ch. 20, to be unconstitutional, declaring appointments made by defendant Rocco Quattrocchi to the Thirteenth Representative District Committee of the Democratic Party void and of no legal effect, and enjoining the Secretary of State from receiving those appointments as lawfully made. The judgment further declared that the plaintiffs would continue to exercise their functions as members of the Thirteenth Representative District Committee until their successors were elected and qualified. A justice of this court issued a modified stay of the Superior Court judgment on June 14, 1982. This modified stay authorized the Secretary of State to receive tentative endorsements from both the old and the new Thirteenth Representative District Committees but to hold such endorsements in abeyance pending further determination of this court.

Thereafter, a hearing on defendants' motion for a stay was held on June 16, 1982. At the time of that hearing the court granted a motion to intervene by Frank J. Fiorenzano, the member of the House of Representatives who currently holds office in the Thirteenth Representative District, and the present members of the new committee. A further stay of the trial court's order was granted, and the appeal was scheduled for hearing on the merits on Monday, June 21, 1982. Following said hearing this court entered an order reversing the judgment of the Superior Court and remanding the case to that court with instructions to enter judgment for defendants. This opinion sets forth the reasons for said order. The facts underlying this controversy are based upon an agreed statement filed by the parties in the Superior Court. Said statement reads as follows.

"1. The plaintiffs in the instant action were duly elected to the 13th Representative District Committee pursuant to Rhode Island General Laws 1956 (1969 Reen-

actment) Section 17–12–7 on September 9, 1980; their election at said primary was uncontested by opponents.

"2. Pursuant to Rhode Island General Laws Section 17–12–7 as then in force, plaintiffs were elected for a term of two years beginning in January, 1981, and until their successors shall have been duly elected, qualified, and organized.

"3. Pursuant to said statute and election, plaintiffs' function as members of the District Committee is to endorse a candidate for the district, to endorse themselves as members of said committee, and to fill vacancies on said committee.

"4. On April 20, 1982, the General Assembly passed House Bill 7876, Substitute A as amended, and now contained PL 1982, c20, which among other things empowered the chairman of the Democratic party, namely; defendant Rocco A. Quattrocchi to appoint forthwith representative democratic committee members in each of 100 Districts throughout the State of Rhode Island (including the 13th Representative District Committee).

"5. Pursuant to said newly enacted statute, defendant, Rocco A. Quattrocchi, as Chairman, appointed a totally new 13th Representative District Committee (none of whom were plaintiffs) and has made appointments in districts throughout the State of Rhode Island.

"6. Plaintiffs were elected to a district which is outlined in green and yellow on the sheets attached hereto and marked as Exhibit A. The population in said district was 8,579; the new members appointed by defendant Quattrocchi to the 13th Representative District Committee were appointed to the reapportioned district outlined in red and yellow on the attached Exhibit A. The population in said reapportioned district, which was created by PL 1982, c20, is 9,624.

"7. The defendant, Robert M. Burns, in his capacity [sic] received and accepted the new appointments made by defendant, Chairman."

## THE EQUAL PROTECTION ISSUE

The first issue asserted by defendants on appeal is that the trial justice erred in finding the challenged statute to be violative of the Fourteenth Amendment to the Constitution of the United States in that it "unconstitutionally cancels the choices made by party voters in the 1980 primary election * * *." This finding of unconstitutionality was apparently based upon the belief that a modification of the endorsement power of a representative district committee constitutes state action and may be justified only in the event that a compelling state interest can be established. The difficulty with this holding is that it is based upon a misconception of the endorsement process. We have held in *Gallant v. LaFrance*, 101 R.I. 299, 306, 222 A.2d 567, 570 (1966):

"While it may be argued that committee endorsement of a primary candidate made pursuant to § 17–12–4, as amended *supra*, confers a theoretical advantage on a candidate so endorsed, it cannot be argued that such endorsement deprives any voter, otherwise qualified to vote in the party primary, from participating equally with all other voters in choosing the party's nominees. In short, it is the action of the majority as expressed by their votes at the polls which makes the determination that is governed by the principle of 'one man, one vote.' "

Thus, the equal protection clause of the Fourteenth Amendment, which protects the fundamental right to vote, is not implicated by a statute that purports only to modify the power of endorsement.

In a searching analysis of a similar set of issues, Chief Judge Pettine in *Fahey v. Darigan*, 405 F.Supp. 1386 (D.R.I.1975), determined that a Rhode Island statute which affected the makeup of Providence ward and city committees of the Democratic and Republican Parties did not violate the equal-protection clause and its "one person one vote" requirement since the endorsement process is essentially private, as opposed to public, action. In so holding, the Federal District Court adopted the ration-

ale set forth by our court in *Gallant v. LaFrance, supra,* and also a similar analysis adopted by the United States Court of Appeals in *Lynch v. Torquato,* 343 F.2d 370 (3d Cir. 1965).

■ In the absence of a constitutional limitation, it is of course within the legislative prerogative to modify or shorten a term of office created by a previous statute. *Gorham v. Robinson,* 57 R.I. 1, 19, 186 A. 832, 842 (1936). This principle is derived from the general proposition that a legislature has the right to alter or to amend any act previously adopted. *Advisory Opinion to the Senate,* 108 R.I. 302, 304, 275 A.2d 256, 257 (1971).

■ Since the equal-protection clause and its related "one person one vote" principle are not implicated by a modification of the endorsement procedure, the Fourteenth Amendment to the Constitution of the United States would not inhibit the action taken by the Legislature in adopting P.L. 1982, ch. 20, § 9. Further, we find no inherent inconsistency in the provision that the former district committee members shall continue to hold office in respect to endorsement of candidates "for an election for senator or representative prior to the first [T]uesday after the first [M]onday in November, 1982." This provision was designed to retain the endorsement power in the former committee members in respect to any election that might take place prior to the November 1982 election. Thus, the General Assembly was attempting to avoid a vacuum in the endorsement process in respect to special elections that might precede the 1982 general election. This provision, in our opinion, does not derogate from the clarity of the appointment power for new committee members conferred upon the chairman of the State Democratic Party. It should also be noted that the persons selected by the state chairman to serve as members of the representative district committees will be subject to the party electoral process beginning with the primary election in 1982 in harmony with the provisions of G.L.1956 (1981 Reenactment) § 17–12–8.

## THE FIRST AMENDMENT ISSUE

In *Fahey v. Darigan, supra,* the court held that a legislative enactment that increased the size of ward committees in the city of Providence constituted a substantial burden upon the party members' associational rights because it was inconsistent with the rule established by the party in question. 405 F.Supp. at 1396–98. Therefore, the court applied strict judicial scrutiny and, in the absence of any proffer of a compelling state interest, found the statute to be invalid. *Id.*

The District Court in so holding relied heavily upon *Cousins v. Wigoda,* 419 U.S. 477, 95 S.Ct. 541, 42 L.Ed.2d 595 (1975). In that case the United States Supreme Court held that the Illinois appellate court had violated the First Amendment associational right of delegates to the National Democratic Party Convention by enjoining a slate of Illinois delegates from taking their seats at such convention even though the credentials committee of the convention had accepted them as delegates. The *Wigoda* rationale rested upon the privileged necessity of a national political party convention to operate independently of state interference, although the state court was attempting to seat delegates who had been elected in a party primary in Illinois. The majority of the Court determined that the Illinois interest in protecting the integrity of its electoral process could not be deemed compelling in the context of the selection of delegates to the national party convention and that "'the convention itself [was] the proper forum for determining intra-party disputes as to which delegates [should] be seated.'" 419 U.S. at 491, 95 S.Ct. at 549, 42 L.Ed.2d at 605 (*quoting O'Brien v. Brown,* 409 U.S. 1, 4, 92 S.Ct. 2718, 2720, 34 L.Ed.2d 1, 6 (1972). Guided by the principles enunciated in *Wigoda, supra,* the Federal District Court in *Fahey* held that enlarging the membership of the Providence City Committee was not supported by a compelling state interest sufficient to overcome the First Amendment rights of the plaintiffs. 405 F.Supp. at 1396–98. In so holding, the court distinguished the case presented to it

from one involving a state interest "such as the need to remedy an existing malapportionment * * *." *Id.* at 1396 (*citing Aiello v. LaFrance*, C.A. No. 70–1814 (R.I.Super. Ct., June 30, 1970) ).

In the case at bar, the statute is not inconsistent with any rule of the Democratic Party. The size of the district committees has not been modified. In this instance the Legislature has authorized the state chairman of the Democratic Party to appoint district committee members in order to carry out the endorsement processes for the general election to be held in 1982. Assuming arguendo that strict judicial scrutiny should be applied to this legislative modification of existing district committees, we must determine whether this legislative intrusion is justified by a compelling state interest. We are of the opinion that it is.

An examination of the act in question discloses that it was designed to implement the reapportionment of the General Assembly. In its application to the current controversy, it carried out a detailed reapportionment of 100 representative districts. Although the agreed statement of facts indicates that the reapportionment in respect to District No. 13 increased population by slightly more than 1,000 persons, it was asserted without contradiction at oral argument that many of the reapportioned districts were changed far more radically in terms of population and area than was the Thirteenth Representative District. It can scarcely be denied that the reapportionment of the House of Representatives pursuant to the mandate of the United States Constitution would rise to the level of a compelling state interest. The obligation to reapportion following a federal census in order to maintain the requirements of equality of population and the "one person one vote" requirement is mandated by both State and Federal Constitutions. *See Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *Sweeney v. Notte*, 95 R.I. 68, 183 A.2d 296 (1962).

It has been recognized that a state's interest in the orderly regulation of elections in light of the critical role played by political parties in the process of selecting and electing candidates for state and national offices justifies enactment of statutory provisions governing the composition and activities of party committees. *Marchioro v. Chaney*, 442 U.S. 191, 99 S.Ct. 2243, 60 L.Ed.2d 816 (1979). Most recently a unanimous Court has upheld a statute of the Commonwealth of Puerto Rico which allows a political party under certain circumstances to fill a vacancy in the Puerto Rican House of Representatives. *Rivera-Rodriguez v. Popular Democratic Party*, —— U.S. ——, 102 S.Ct. 2194, 72 L.Ed.2d 628 (1982). This holding came in response to a challenge which asserted that the conferring of such an appointment privilege violated the plaintiffs' First Amendment rights of association as well as their right to equal protection under the laws.

In the instant case, the Rhode Island Legislature, having enacted a reapportionment statute relating to 100 representative districts, found it necessary to adopt an interim appointment procedure in order to ensure that representative district committees could function in an orderly fashion in preparation for the November 1982 election. In some instances members of former representative district committees would no longer reside in the newly reapportioned districts. In some instances the population and geography of the new districts would be so significantly changed that the representation of the former district committee members would be, in the legislative judgment, inadequate. In order to avoid the expense and difficulty of a special election for 100 district committees, the Legislature authorized and empowered the respective party chairmen to appoint in each instance "members of a representative district committee for each representative district." Nothing in the statute required the state chairmen to appoint different members to a district committee under circumstances in which all members of the former committee still resided in the district or in which the population and geographical area had not been significantly changed. In authorizing

the state chairmen of the Democratic and Republican Parties to make these appointments, the Legislature was adopting the least intrusive means of guaranteeing an orderly process of endorsements and, at the same time, allowing the chief party officer to conduct the affairs of his respective party.

In passing upon the constitutionality of P.L.1982, ch. 20, § 9, it is not the function of this court to approve or disapprove of the wisdom of the action taken by defendant Quattrocchi pursuant to the authority reposed in him. The plaintiffs may well complain that the state chairman of the Democratic Party might have reappointed them or some of them to office as members of the Thirteenth Representative District Committee. However, the action of the chairman was not mandated by the statute and essentially represented his individual determination. As in *Marchioro v. Chaney, supra,* the fact that the state chairman did not choose the alternative course desired by plaintiffs can scarcely be determined to be the responsibility of the State Legislature.

In authorizing the party chairman to appoint members of representative district committees, the Legislature obviously intended to confer upon the chief official of each major party, who in a derivative sense represents all members of the party, the authority to respond to the changed conditions within each of 100 districts. The chairman was not compelled to appoint different people but obviously was authorized to do so.

We find that this statutory authorization did not constitute an undue burden upon the associational interests of the plaintiffs and other members of the Democratic Party; and to the extent that such burden was imposed, it was justified by the compelling state interest in reapportioning the General Assembly pursuant to the requirements of the Federal and State Constitutions.

For the reasons stated, this court entered its order reversing the judgment of the Superior Court and remanding the papers in the case to the Superior Court with instructions to enter judgment for the defendants.

BEVILACQUA, C. J., and SHEA, J., did not participate.