

# THE ATTORNEY GENERAL
## OF TEXAS

September 9, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Gary A. Goff                     Opinion No. JM-784
Hockley County Attorney
Courthouse                                 Re:  Re-allocation of road and
Levelland, Texas    79336                  bridge funds by a commissioners
                                           court, and related questions

Dear Mr. Goff:

Article 6702-1,[1] V.T.C.S., the County Road and Bridge Law
[hereinafter the act], details the authority and responsibilities of
commissioners courts regarding construction and maintenance of a
county's roads and bridges. You ask three questions about the proper
construction of the act, specifically about the commissioners court's
authority to re-allocate from one precinct to another money from the
county road and bridge fund appropriated for county road and bridge
purposes, but unexpended. You do not ask whether the money from the
fund may be expended for purposes other than for roads and bridges;
you ask only whether the expenditure of the money may be directed to
one precinct rather than another. First, we conclude that a
commissioners court does have authority in the situation that you
describe to re-allocate, among the various precincts, some or all of
the unencumbered money from the road and bridge fund previously
appropriated to a specific precinct and unexpended at the end of the
fiscal year. Second, we conclude that section 3.101(c) of the act is
not applicable to a commissioners court that does not employ road
commissioners pursuant to subchapter B of chapter 3 of the act; the
commissioners court is under no general obligation to expend money in
the road and bridge fund in proportion to the amount of the money
collected in each precinct. And third, we conclude that, in the
situation that you describe, a commissioners court organized as road
supervisors pursuant to chapter 2 of the act has discretion to
allocate money in its road and bridge fund in a manner that takes into
consideration the amount of funds previously appropriated to any one
precinct, but unexpended.

---

1. Sections 2.041 and 2.043 of the act have been repealed,
effective September 1, 1987. Acts 1987, 70th Leg., ch. 149, §49(1),
at 1397, 2547.

Before we address your first question, a general discussion of the act might prove helpful. The act sets forth provisions applicable to all counties, detailing the authority and responsibilities of commissioners courts regarding construction and maintenance of the county's roads and bridges. Chapter 2 of the act sets forth the powers of the commissioners court. Subchapters A through E specify the authority and responsibility of commissioners courts regarding the creation or discontinuance of roads, drainage on public roads, bridges, traffic regulations, and road regulations in subdivisions, respectively. In each instance, authority is conferred on the commissioners court sitting as a legislative and administrative body, not on individual commissioners.

The act also sets forth three optional methods of organizing the commissioners court for road and bridge construction and maintenance. If none of the optional methods is implemented, the court is governed in its methods of operation by section 2.009 of the act, which provides that county commissioners are supervisors of public roads, except when road commissioners are employed. Section 2.009 of the act sets forth the following:

> Sec. 2.009. (a) Except when road commissioners are employed, the county commissioners shall be supervisors of public roads in their respective counties, and each commissioner shall supervise the public roads within his commissioner's precinct once each month. He shall also make a sworn report to each regular term of the commissioners court held in his county during the year, showing:
>
> (1) the condition of all roads and parts of roads in his precinct;
>
> (2) the condition of all culverts and bridges;
>
> (3) the amount of money remaining in the hands of overseers subject to be expended on the roads within his precinct;
>
> (4) the number of mileposts and fingerboards defaced or torn down;
>
> (5) what, if any, new roads of any kind should be opened in his precinct and what, if any, bridges, culverts, or other improvements are necessary to place the roads in his precinct in good condition and the probable cost of the improvements; and

(6)  the name of every overseer who has failed to work on the roads or who in any way neglected to perform his duty.

(b)  The report shall be spread on the minutes of the court to be considered in improving public roads and determining the amount of taxes levied for public roads.

(c)  The supervisor's report shall be submitted, together with all contracts made by the court since its last report for any work on any road, to the grand jury at the first term of the district court occurring after the report is made to the commissioners court.

The act also provides in chapter 3 optional methods of organizing the commissioners court for its road construction and maintenance responsibilities.  Under subchapter A, the members of the commissioners court are ex officio road commissioners of their respective precincts

and under the direction of the commissioners court have charge of the teams, tools, and machinery belonging to the county and placed in their hands by the court.  They shall superintend the laying out of new roads, the making or changing of roads, and the building of bridges under rules adopted by the court.

V.T.C.S. art. 6702-1, §3.001(a).  Section 3.002(a) further specifies the powers of the commissioners court:

The commissioners court shall adopt a system for working, laying out, draining, and repairing the public roads as it considers best, and from time to time the court may change its plan or system of working.

Subchapter B provides for a commissioners court/road commissioner or road supervisor system.  The subchapter authorizes a commissioners court to hire not more than four road commissioners or, in the alternative, a road superintendent, and sets forth their powers and duties.  In the event that the court hires one or several road commissioners, subsection (c) of section 3.101 of the act requires that, as nearly as possible, money in the fund should be expended in each precinct in proportion to the amount of taxes collected in that precinct.

Subchapter C permits the qualified voters of a county, by petition and election, to create a county-wide road department with the commissioners court serving as the policy-determining body and an appointed county road engineer serving as chief executive officer. Section 3.208 sets forth the county road engineer's duties. Section 3.210 provides:

> All expenditures for the construction and main-
> tenance of the county roads and the operation of
> the county road department shall be paid out of
> the road and bridge fund strictly in accordance
> with annual budgeted appropriations. However, on
> application of the county road engineer, the
> commissioners court may transfer any part of any
> unencumbered appropriation balance for some item
> within the road and bridge fund budget to some
> other item.

You inform us that the commissioners court of Hockley County over twenty years ago ordered that each of the four precincts be appropriated twenty-five percent of the total county road and bridge fund, even though one precinct contained over fifty-five percent of the county's population. At the end of 1985, one precinct had an unexpended balance in its road and bridge fund of almost $600,000, while two of the other precincts had a surplus of over $100,000. One precinct's fund surplus was only $45,000. You inform us that none of the optional methods of governance and organization set forth in subchapter C have been implemented. The commissioners court then is governed by section 2.009 of the act. We now turn to your first question.

You first ask:

> Does a commissioners court have the authority
> to re-allocate among the various precincts for
> road and bridge purposes some, or all, of road and
> bridge funds previously allocated to particular
> precincts and unexpended at the end of the year?

We answer your first question "yes." We note at the outset that the funds about which you inquire are dedicated by the Texas Constitution and may be expended only for county road and bridge purposes. Tex. Const. art. VIII, §1-a; V.T.C.S. art. 6702-1, §4.003(b). We do not understand you to ask whether such unexpended money may be diverted for other purposes. Instead we understand you to ask whether such unexpended money may be expended for road and bridge purposes but upon projects in a precinct other than the one to which the money was initially appropriated. We also note that Hockley County has a population of less than 25,000 inhabitants according to

the 1980 federal census.  Therefore, article 1666a,[2] V.T.C.S., which applies to counties whose population is in excess of 225,000 inhabitants and specifically permits the transfer of an existing budget surplus from one budget item to another "of like kind and fund," is inapplicable.  The County Road and Bridge Act neither expressly authorizes nor prevents such a re-allocation; the Uniform Budget Law of 1931, however, does authorize a budget re-allocation or amendment.

Article 689a-9,[3] V.T.C.S., part of the Uniform Budget Law of 1931, provides that county budgets shall be prepared "to cover all proposed expenditures of the county government for the succeeding year."  Article 689a-11, V.T.C.S., provides:

> The Commissioners' Court in each county shall each year provide for a public hearing on the county budget -- which hearing shall take place on some date to be named by the Commissioners' Court subsequent to August 15th and prior to the levy of taxes by said Commissioners' Court.  Public notice shall be given that on said date of hearing the budget as prepared by the County Judge will be considered by the Commissioners' Court.  Said notice shall name the hour, the date and the place where the hearing shall be conducted. Any taxpayer of such county shall have the right to be present and participate in said hearing.  At the conclusion of the hearing, the budget as prepared by the County Judge shall be acted upon by the Commissioners' Court.  The Court shall have authority to make such changes in the budget as in their judgment the law warrants and the interest of the taxpayers demand.  When the budget has been finally approved by the Commissioners' Court, the budget, as approved by the Court shall be filed with the Clerk of the County Court, and taxes levied only in accordance therewith, and no expenditure of the funds of the county shall thereafter be made except in strict compliance

----

2.  Article 1666a, V.T.C.S., has been repealed, effective September 1, 1987.  Acts 1987, 70th Leg., ch. 149, §49(1), at 2545.

3.  Articles 689a-9 to 689a-16, V.T.C.S., have been repealed, effective September 1, 1987.  Acts 1987, 70th Leg., ch. 149, §49(1), at 2543.  Article 689a-20, V.T.C.S., has been amended.  Acts 1987, 70th Leg., ch. 149, §2, at 2475.

<u>with the budget as adopted by the Court. Except</u>
<u>that emergency expenditures, in case of grave</u>
<u>public necessity, to meet unusual and unforeseen</u>
<u>conditions which could not, by reasonably diligent</u>
<u>thought and attention, have been included in the</u>
<u>original budget, may from time to time be</u>
<u>authorized by the Court as amendments to the</u>
<u>original budget.</u> In all cases where such
amendments to the original budget is made, a copy
of the order of the Court amending the budget
shall be filed with the Clerk of the County Court,
and attached to the budget originally adopted.
(Emphasis added.)

Article 689a-20, V.T.C.S., provides the following:

Nothing contained in this Act shall be
construed as precluding the Legislature from
making changes in the budget for State purposes or
prevent the County Commissioners' Court from
making changes in the budget for county purposes
or prevent the governing body of any incorporated
city or town from making changes in the budget for
city purposes, or prevent the trustees or other
school governing body from making changes in the
budget for school purposes; and the duties
required by virtue of this Act of State, County,
City and School Officers or Representatives shall
be performed for the compensation now provided by
law to be paid said officers respectively.

It is clear from a reading of articles 689a-9, 689a-11, and
689a-20, V.T.C.S., that a commissioners court may amend its budget; it
is less clear under what circumstances such an amendment may be
effected. Two different constructions have been adopted by this
office. One construction reads article 689a-20, V.T.C.S., as confer-
ring broad authority on the commissioners court to make "budget
changes" in its budget, such changes not constituting "budget
amendments" for purposes of article 689a-11, V.T.C.S. Under this
construction, there need not be an emergency justifying a "budget
change"; however, there must be an "emergency" justifying a "budget
amendment" under article 689a-11, V.T.C.S. A "budget amendment" was
thought to be necessary when an item was added to the budget that had
not been included in the budget as originally adopted. An increase
(or decrease) in the expenditure of money for any item included in the
budget was thought to need only a "budget change," not a "budget
amendment." See Attorney General Opinions MW-169 (1980); C-499
(1965); O-2427 (1940).

The distinction between a "change" and an "amendment" was explicitly set forth in Attorney General Opinion C-499 (1965). In that opinion, this office was asked about the proper procedure that a county must follow to amend its budget in an instance in which all of the appropriated money for a particular item or object had been expended but there was a surplus in the account of another item in the budget. The commissioners court wanted to transfer money from one budget item to another. We here set forth in extenso the opinion's discussion of the distinction between a "budget change" and a "budget amendment":

> Section 11 of Article 689a requires that no funds of the county shall be expended except in strict compliance with the budget as adopted by the Court. This section, however, does authorize amendments to the budget for emergency expenditures in cases of grave public necessity, to meet unusual and unforeseen conditions which could not, by reasonably diligent thought and attention, have been included in the original budget.

> Section 20 of Article 689a expressly authorizes the Commissioners to make changes in the county budget for county purposes. However, these changes are limited to changes within the objects covered by the budget. Rains v. Mercantile National Bank of Dallas, 188 S.W.2d 798 (Tex. Civ. App. 1945), affirmed 144 Tex. 490, 191 S.W.2d 850 (1946); Southland Ice Co. v. City of Temple, 100 F.2d 825 (5th Cir. 1939). It was held in Attorney General's Opinion No. O-1053 that Section 20 of Article 689a does not authorize the Commissioners' Court to increase the budget after its adoption.

> It is our opinion that the Legislature intended for the restrictions in Section 11 of Article 689a to apply to situations where new items were added to the original budget which would require an increase in the original budget. This reasoning is in keeping with the purposes of the budget as outlined above. In the Rains case, the Court in distinguishing between the provisions of Section 11 and Section 20 of Article 689a said:

> > The quoted portion of Art. 689a-11 and Art. 689a-20 seems to be the only provisions relating to amendment of the budget. Art. 689a-11 is very specific as to when the

county budget may be amended and the steps to be taken to make the amendment. <u>It is thought that the restriction as to amendment applies only when new or additional expenditures not provided for in the original budget are sought to be added by amendment.</u> Under Art. 689a-20, subject to limitation of Art. 689a-11, a county budget may be amended at any time. The limitation of expenditures provided for by the second amendment to the County budget was not such as comes within the limitation provided in Art. 689a-11. (Emphasis added.)

As will be noted from the above quote, the Court refers to the 'change' in Article 689a-20 as an 'amendment.' It also points out that 'amendment under Section 11' and 'amendment under Section 20' of Article 689a are different.

Relying upon Attorney General Opinion C-499, Attorney General Opinion MW-169 (1980) quoted the following passage from that opinion in concluding that no grave public necessity was necessary in order to "change" the budget:

[W]here all of the budgeted funds for a particular line item have been expended, but there is a surplus in other line item accounts in the department budget, and the Commissioners' Court reallocates the funds, transferring funds from the surplus line item account to the depleted line item account, this would require an amendment to the budget as contemplated by Section 20 of Article 689a. Also, it is our opinion that funds may be transferred from the budget of one department to the budget of another. However, Constitutional funds may not be transferred in contravention of Section 9 of Article VIII of the Texas Constitution. <u>The transferring of the funds in both instances above do not require new expenditures not included in the original budget, therefore, the provisions of Section 11 of Article 689a are not applicable.</u>

<u>It is our opinion that the correct procedure in transferring the funds in the above two situations would be to amend the budget. However, this would not require the existence of an emergency as contemplated by Section 11 of Article 689a.</u> An

> order of the Commissioners' Court showing how the
> funds were reallocated and showing that the budget
> was amended would, in our opinion, suffice to
> affect the amendment of the budget under the above
> situations.   (Emphasis added.)

See also Southland Ice Co. v. City of Temple, 100 F.2d 825 (5th Cir. 1939).

The other construction of the Uniform Budget Law of 1931 reads article 689a-9, 689a-11, and 689a-20, V.T.C.S., to require an article 689a-11 "budget amendment" in any situation in which the budget is changed by the commissioners court.   Under this construction, an article 689a-11 amendment is required, both when the court seeks to re-allocate from one budget item to another surplus money, as well as when the court seeks to add another item to the budget not included in the original budget.   This construction requires that the court find that an emergency exist in every instance in which a change (or amendment) to the budget is sought.   See Attorney General Opinions JM-733 (1987); H-777 (1976); H-12, H-11 (1973).

While the language of articles 689a-9, 689a-11, and 689a-20, V.T.C.S., taken together, can certainly be read to support the first construction, the great weight of authority in the state, with the obvious exception of Attorney General Opinions C-499 and MW-169, supports the second.   There is no question that the Uniform Budget Law of 1931 requires that there be an article 689a-11 "budget amendment" in an instance in which an item, not listed in the originally approved budget, is added.   The issue is whether a re-allocation of surplus funds from one item in the budget to another item in the budget requires an article 689a-11 "budget amendment," or whether an article 689a-20 "budget change" is sufficient.   Or, in another way, whether article 689a-20 does actually contemplate a "budget change."   On the basis of prior authority, we conclude that an article 689a-11 "amendment" is required whenever the budget is changed.   Attorney General Opinions JM-733 (1987); H-777 (1976); H-12, H-11 (1973). Accordingly, we overrule Attorney General Opinions MW-169 (1980) and C-499 (1965) to the extent of conflict with this opinion.

Many of the attorney general opinions that have construed the budget law dealt with fact situations involving an addition of an item to the budget that was not included in the original budget.   See, e.g., Attorney General Opinions O-6726 (1945); O-6132, O-5863 (1944); O-4642 (1942); O-4127 (1941); O-2498 (1940); O-1022 (1939).   These opinions concluded that a budget amendment enacted pursuant to article 689a-11, V.T.C.S., was necessary in order to add an item; that such a change constitutes an "amendment."   This conclusion is consistent with both of the constructions that have been adopted.   See, e.g., Dancy v. Davidson, 183 S.W.2d 195 (Tex. Civ. App. - San Antonio 1944, writ

ref'd); Morrison v. Kohler, 207 S.W.2d 951 (Tex. Civ. App. - Beaumont 1947, writ ref'd n.r.e.). However, many of the attorney general opinions construing the budget law dealt with fact situations involving, not additions of items to the budget, but increases in expenditures for items listed originally in the budget. See, e.g., Attorney General Opinions O-6749, O-6689, O-6655, O-6576, O-6470 (1945); O-5184, O-5053 and O-5053A (1943); O-4833 (1942); O-2617 (1940). In every instance, these opinions concluded that, in order for such a change to be effected in the budget, an article 689a-11 "amendment" was necessary. See, e.g., McClellan v. Guerra, 258 S.W.2d 72 (Tex. 1953); Rains v. Mercantile National Bank at Dallas, 188 S.W.2d 798 (Tex. Civ. App. - El Paso 1945), aff'd, 191 S.W.2d 850 (Tex. 1946) [hereinafter Rains]; Bexar County v. Hatley, 150 S.W.2d 980 (Tex. 1941).

It might be argued that this second group of opinions is not authoritative, because they were issued prior to the Texas Supreme Court's affirmance of the Rains case in 1946. This argument construes Rains to support the construction of the Uniform Budget Law of 1931 set out in Attorney General Opinion C-499, which holds that "budget amendment" and "budget change" are distinct and separate and provided for in articles 689a-11 and 689a-20, V.T.C.S., respectively. We reject this suggestion because, first, we disagree with the construction of Rains set forth in Attorney General Opinion C-499, and, second, we think that it is significant that the construction of the Budget Law that Attorney General Opinion C-499 assumes Rains stands for was specifically set forth in two earlier Attorney General Opinions issued during the 1940's and not subsequently followed: Attorney General Opinions O-6223 (1944), which was obviously not followed in other later opinions, and O-2427 (1940), which was impliedly overruled in a subsequent case.

First, we conclude that the language from Rains quoted in Attorney General Opinion C-499 merely stands for the proposition that a budget amendment can be effected at any time, not that there is a distinction between "amendment" or "change" nor that the requirement of a grave public necessity can be waived for certain sorts of amendments but not for others.

Second, in Attorney General Opinion O-6223, a county auditor asked the following question:

> When the Budget is set and approved by the Commissioners Court for each officer of the county and each office has its budget itemized as postage, deputy hire, bond premium, car allowance, must the county official stay within his budget as itemized or stay within it as a Grand Total? I

> mean by this, if a certain amount is set aside for
> deputy hire, can he only spend that amount for
> deputy hire or can he spend his whole grand total
> budget just for deputy hire if he wishes?

In concluding that article 689a-20, V.T.C.S., authorized changes within the objects covered by the budget for county purposes without any necessary recourse to article 689a-11, V.T.C.S., the opinion quoted from Southland Ice Co. v. City of Temple, 100 F.2d 825 (5th Cir. 1939), the first judicial authority to construe the Budget Law:

> [S]ubdivision 20 of the Budget Law, authorizing
> changes in the budget, must refer to changes
> within the objects covered by the budget, because
> if new matters could be added to the budget, then
> the emergency provision would serve no purpose.

For two reasons, we decline to rely upon Attorney General Opinion O-6223. First, the willingness of this office to construe the Uniform Budget Law of 1931 in the way in which Attorney General Opinion O-6223 did is suspect at best. Only one other opinion issued during this period adopted this construction and that opinion was impliedly overruled by the Texas Supreme Court; opinions issued both prior and subsequent to the issuance of Attorney General Opinion O-6223 construed the Uniform Budget Law to require an article 689a-11 "amendment" even in an instance in which a commissioners court sought an increase or decrease for an item listed in the budget as originally adopted. See, e.g., Attorney General Opinions O-6749, O-6689, O-6655, O-6576, O-6470 (1945). Second, and more significant, the correctness of the Southland case, upon which Attorney General Opinion O-6223 relied, was called into question impliedly by the Texas Supreme Court in Bexar County v. Hatley, 150 S.W.2d 980 (Tex. 1941) [hereinafter Bexar County]. Bexar County, which will be discussed below, contained the following language:

> If no item had been set up originally to meet the
> expense of elections and the amendment had sought
> to set up and provide for a new budget object,
> another question would be presented, Southland Ice
> Company v. City of Temple, 5 Cir., 100 F.2d 825,
> 829. In that case it is held that under the bud-
> get law "the city could not transfer funds and
> apply them to a new object not mentioned in the
> budget. . . .'  [Emphasis in original]. Whether
> this holding is correct is not necessary to be
> determined in the present case, since it appears
> from the recitals of the orders and contract set
> out above that sufficient funds were available
> under the tax levy made on the basis of the

> original budget to pay the rental expense on the
> voting machines.  (Emphasis added.)

150 S.W.2d 980 at 988.  Because of the above underscored qualifying
language in Bexar County, coupled with the fact that subsequent
opinions failed to follow Southland's reasoning, we conclude that this
office's reliance in Attorney General Opinions C-499 and MW-169 on the
rationale of Southland is misplaced.  The other opinion issued in this
period that employed the Southland rationale was impliedly overruled
by the Texas Supreme Court in Bexar County.

In Attorney General Opinion O-2427 (1940), the district attorney
of Bexar County asked whether the commissioners court could amend its
budget to expend money that had initially been budgeted for the
purpose of paying for elections conducted by paper ballot and instead
expend it for the lease-purchase of voting machines.  The opinion
declared that article 689a-11, V.T.C.S., was inapplicable.  The
opinion adopted the "amendment" versus "change" distinction and
concluded that payment for voting machines out of an appropriation for
election expenses is not a new item requiring an "amendment" to the
budget pursuant to article 689a-11.  Instead, it is only a "change"
permitted by article 689a-20.  The opinion quoted from Southland and
concluded that the commissioners court's re-allocation was proper.
The opinion was issued in August of 1940.  Suit to enjoin the
commissioners court from acting pursuant to the contract entered into
was filed in June, 1940, prior to the issuance of the opinion.

The Texas Court of Civil Appeals in Hatley v. Bexar County, 144
S.W.2d 695 (Tex. Civ. App. - San Antonio 1940, no writ) made no
reference in its decision to Attorney General Opinion O-2427, issued
just a few months previously.  Whether the court knew of its issuance
is not known.  In any event, the court did not agree with either the
rationale or the conclusion of the opinion.  The court did not adopt
the opinion's "budget amendment" versus "budget change" distinction.
The court, noting that the county would experience a deficit even in
the event that all of the money appropriated to elections by paper
ballot were expended for voting machines, declared:

> The "Budget Law," Art. 689a-11, Vernon's Tex. Civ.
> Stats., provides in effect that when the budget is
> adopted taxes shall be levied only in accordance
> therewith and no expenditure of the county shall
> thereafter be made except in strict compliance
> with the budget as adopted by the Court.  The only
> exception to this rule is that emergency expend-
> itures may be made in case of grave public necess-
> ity, to meet unusual and unforeseen conditions
> which could not, by reasonably diligent thought
> and attention, have been included in the original

> budget. <u>The rental of the voting machines under
> the circumstances set forth in the petition did
> not constitute a grave public necessity which
> could not have been foreseen.</u> (Emphasis added.)

144 S.W.2d at 698. The court construed the action of the commissioners court as adding an item to the budget that had not been included in the budget as originally adopted. The Texas Supreme Court disagreed.

In <u>Bexar County v. Hatley</u>, 150 S.W.2d 980 (Tex. 1941), the court concluded that ". . . under our system of county government the holding therein of the elections required by law to be held, is not only a 'grave public necessity' but is an <u>absolute public necessity</u>." 150 S.W.2d at 987 (emphasis in original). The court characterized the action of the commissioners court as a "re-allocation" among budget items already adopted, rather than as an addition to the budget of an item not originally included and stated:

> It will be noted also that the order amending the
> budget did not require the expenditure of any fund
> not already set up for expense of elections in the
> county. In other words, the appropriation made by
> the amendment was within an object (election
> expense) of the budget as originally adopted.

150 S.W.2d at 988. The court specifically declined to characterize the action of the Bexar County commissioners court as the addition of a new item: "If no item had been set up originally to meet the expense of the elections and the amendment had sought to set up and provide for a new budget, another question would be presented, [citing <u>Southland</u>]."

The Texas Supreme Court, when given an opportunity to recognize the article 689a-11 "amendment" and article 689a-20 "change" distinction adopted the previous year in Attorney General Opinion O-2427 in the very same factual situation that gave rise to the opinion request, declined to do so. In a situation characterized by the Texas Supreme Court as one involving a re-allocation among objects provided for in the originally adopted budget, the Texas Supreme Court concluded than an article 689a-11 "amendment" to the budget was necessary rather than an article 689a-10 "change" and that the article 689a-11 requirement that only a grave public necessity warrants an amendment was satisfied in the fact situation presented by Bexar County. In other words, the Texas Supreme Court, when offered a chance to so hold, did not adopt the construction of the Uniform Budget Law adopted by Attorney General Opinions C-499 and MW-169. Because of the Texas Supreme Court's evident construction of articles 689a-11 and 689a-20 set forth in <u>Bexar County</u> and the overwhelming

number of early Attorney General opinions so holding, we conclude that the Uniform Budget Law requires that there be an emergency before there can be an amendment to the duly adopted county budget. Accordingly, Attorney General Opinions C-499 and MW-169 are hereby overruled to the extent of conflict.

We add one caveat regarding the commissioners court's authority to amend its budget. Generally, a governing body of a political subdivision has the right to alter or amend any act that it adopts, including acts appropriating money, unless that right is expressly or by necessary implication restrained by provisions of the state constitution or statutes or provisions of the United States Constitution made binding upon the states. See, e.g., In re Advisory Opinion to the Senate of the State of Rhode Island, 275 A.2d 256 (R.I. 1971); Unemployment Compensation Commission v. Renner, 143 P.2d 181 (Wyo. 1943); Lee v. City of Decatur, 172 So. 284 (Ala. 1937); Carr v. Frohmiller, 56 P.2d 644 (Ariz. 1936); McConnel v. Gallet, 6 P.2d 143 (Idaho 1931); State ex rel. Board of Regents of Normal Schools v. Donald, 157 N.W. 782 (Wisc. 1916). Both article I, section 16, of the Texas Constitution and article I, section 10, of the United States Constitution expressly prohibit a legislative body from adopting any act that has as its consequence the impairment of contracts. Sharber v. Florence, 115 S.W.2d 604 (Tex. 1938); Langever v. Miller, 76 S.W.2d 1025 (Tex. 1934). Accordingly, the only limitation would arise regarding unencumbered funds. We conclude that a commissioners court does have authority in the situation that you describe to re-allocate among the various precincts, some or all of the unencumbered money from the road and bridge fund previously appropriated to specific precincts and unexpended at the end of the year.

You next ask:

> Are the provisions of section 3.101(c) of article 6702-1, V.T.C.S., applicable to a commissioners court which has not employed road commissioners under subchapter B of chapter 3 of article 6702-1; and, if not, is the commissioners court under any general obligation to expend road and bridge funds in proportion to the amount of funds collected in each precinct?

We answer both of your questions in the negative. Section 3.101(c) of the act is contained in subchapter B, which sets forth the provisions for the optional commissioners court/road commissioner or road supervisor system. It provides the following:

> The commissioners court shall see that the road and bridge fund is judiciously and equitably expended on the roads and bridges of its county.

> As nearly as the condition and necessity of the roads will permit, the fund shall be expended in each commissioners precinct in proportion to the amount collected in the precinct. Money used in building permanent roads shall first be used only on first-class or second-class roads and on those roads that have the right-of-way furnished free of cost to make as straight a road as is practicable and that have the greatest bonus offered by the citizens of money, labor, or other property. (Emphasis added.)

None of the three optional methods of organization may be implemented without an affirmative act on the part of either the commissioners court (in the case of implementing subchapter A or subchapter B) or the voters (in the case of subchapter C). In this instance, you inform us that no action has been taken by either the voters or by the commissioners court. Therefore, the court is not governed by the provisions of chapter 3 and section 3.101(c) is inapplicable. Nor have we found any other provision of the act that requires the commissioners court to expend money in the road and bridge fund in each precinct in roughly the same proportion as taxes are collected. The commissioners court is the governing and administrative body of a county in Texas; it has the power to determine the county budget and make appropriations of funds. See Tex. Const. art. X, §18; Rheuark v. Shaw, 628 F.2d 297 (5th Cir. 1980), cert. denied, 450 U.S. 931 (1981). Absent a specific provision to the contrary, the discretion to make such decisions is reposed solely in the commissioners court. Accordingly, we conclude that section 3.101(c) of the act is not applicable to a commissioners court that does not employ road commissioners pursuant to subchapter B of chapter 3. Nor is the commissioners court under a general obligation to expend money in the road and bridge fund in proportion to the amount of the money collected in each precinct.

Finally, you ask:

> Does a commissioners court have the authority to allocate road and bridge funds to each precinct in a way other than in proportion to the amount collected in each precinct based primarily on the fact that the precincts retain disproportionate amounts of road and bridge funds carried over from allocation in previous years?

Articles 989a-9 through 989a-11, V.T.C.S., confer the authority and the responsibility to the commissioners court to adopt a budget appropriating county funds for legitimate county purposes. There is nothing in either the statutes quoted above or in the County Road and

Bridge Act that acts to restrict the court's discretion in the manner that concerns you. See generally Bexar County v. Hatley, 150 S.W.2d 980 (Tex. 1941); Weber v. City of Sachse, 591 S.W.2d 563 (Tex. Civ. App. – Dallas 1979, no writ). Accordingly, we answer your third question in the affirmative.

S U M M A R Y

A commissioners court has authority to re-allocate, among the various precincts, some or all of the road and bridge funds previously appropriated to specific precincts and unexpended at the end of the fiscal year. Section 3.101(a) of the act is inapplicable to a commissioners court that does not employ road commissioners pursuant to subchapter B of chapter 3 of the act; the commissioners court is under no general obligation to expend money in the road and bridge fund in proportion to the amount of the money collected in each precinct. A commissioners court organized as road supervisors pursuant to chapter 2 of the act has discretion to allocate money in its road and bridge fund in a manner that takes into consideration the amount of funds previously appropriated to any one precinct, but unexpended. In order for a budget amendment to be effective, a commissioners court must comply with article 689a.

Very truly yours

JIM MATTOX
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General