[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
The matter presently before the Court is on remand from the Supreme Court pursuant to an order entered on March 21, 1990. The pertinent facts are as follow.
James McGrath and Clinton H. Wynne (hereinafter collectively "plaintiffs") are former members of the Board of Elections of the State of Rhode Island. In 1966, McGrath was appointed as a commissioner of the four-member board. Wynne was similarly appointed in 1974. During their tenure, plaintiffs, as well as the other members of the board, were compensated at a level as established by the unclassified pay board.
In 1979, the General Assembly increased the size of the board from four (4) to seven (7) members. At the time of this expansion, the State was experiencing certain fiscal constraints which prompted the seven-member board to hold a meeting in order to discuss their salary for serving on the board. It was subsequently decided that the total salary amount paid to the previous four members would be equally divided amongst the seven-member composition of the board so as not to increase the total salary paid by the State. Thereafter, plaintiffs' salaries for serving on the board were reduced commencing in 1979. This reduction continued until July 1985, when plaintiffs failed to win reappointment to the board.
Plaintiffs subsequently filed separate actions against Joseph R. DiStefano, in his capacity as Chairman of the Board of Elections, as well as other state officials (hereinafter collectively "defendants"), on or about October 14, 1987. By stipulation dated December 14, 1987, the cases were consolidated for trial. Plaintiffs alleged that the salary adjustment was made without their express authority and was otherwise unlawful pursuant to G.L. 1956 (1984 Reenactment) § 36-4-16.3.[1]
Defendants answered by contending that, inter alia, the plaintiffs were barred from recovery under the doctrine of sovereign immunity.
In a decision dated December 7, 1988, Justice Richard Israel dismissed plaintiffs' complaints holding that the State was indeed immune from liability. Wynne v. DiStefano, Vol. 5, Dec. 7, 1988, C.A. No. 97-4050, Israel, J.; McGrath v. DiStefano,
Vol. 5, Dec. 7, 1988, C.A. No. 87-4617, Israel, J.. Plaintiffs thereafter filed a timely appeal of the decision to the Rhode Island Supreme Court.
While said appeal was pending, the General Assembly, on July 5, 1989, passed House Bills 89-H 6798 and 89-H-6799, which authorized plaintiffs to bring suit against the State for a breach of contract action. The Bills further provided that plaintiffs were entitled to recover damages up to One Hundred Thousand Dollars ($100,000.00). The Supreme Court sustained plaintiffs' appeal pro forma and remanded the case to this Court for further proceedings consistent with the General Assembly's actions.
Plaintiffs now seek to hold the State liable for the reduction in their salaries alleging that the actions of the board constituted an interference with their respective contracts with the State. Plaintiffs further allege that defendant's actions constituted fraudulent activity.
Alternatively, the State presents several challenges to plaintiffs' claims. First, the State contends that the General Assembly, in passing House Bills 89-H 6798 and 89-H 6799, has improperly interfered with the function of the judiciary. Second, and perhaps more compelling, the State argues that the passage of the special legislation constitutes a violation of equal protection in derogation of both the state and federal constitutions. This last argument is dispositive of the instant case.
The State specifically challenges the constitutionality of the special legislation under Article I § 2 of the Rhode Island Constitution, which provides in its entirety as follows:
 Laws for good of whole — Burdens to be equally distributed — Due process — Equal protection — Discrimination — No right to abortion granted. — All free governments are instituted for the protection, safety, and happiness of the people. All laws, therefore, should be made for the good of the whole; and the burdens of the state ought to be fairly distributed among its citizens. No person shall be deprived of life, liberty or property without due process of law, nor shall any person be denied equal protection of the laws. No otherwise qualified person shall, solely by reason of race, gender or handicap be subject to discrimination by the state, its agents or any person or entity doing business with the state. Nothing in this section shall be construed to grant or secure any right relating to abortion or the funding thereof.
The very nature of the equal protection clause is to mandate that all persons, similarly situated, be treated equally. Yet, it is axiomatic that this well-settled principle does not render invalid legislation which affects some, but not all persons.See Boucher v. Sayeed, 459 A.2d 87, 91 (R.I. 1983). Consequently, state legislatures are often empowered with a wide latitude of discretion in enacting laws which affect some classes of citizens differently from others. Id. The constitutionality of the legislation, then, hinges upon whether this discrimination can be supported by an appropriate governmental interest.
Where a challenge to a legislative act is premised upon equal protection, a threshold question to its constitutionality is whether the act involves either a suspect classification or a fundamental right. Where either is at issue, a constitutional analysis of the act is carried out under strict scrutiny and only a compelling state interest will sustain the act's constitutional validity. Id. Where, however, neither a suspect class nor a fundamental right is at issue, the act will survive an equal protection challenge where the discrimination bears some rational or reasonable relationship to a legitimate state interest. Id.
Under this traditional rational basis standard, a challenged classification is valid if, at the time of passage, any state of facts can reasonably be conceived to support it. BurrillvilleRacing Ass'n. v. State, 118 R.I. 154, 157, 372 A.2d 979, 982 (1977).
The instant matter involves neither a suspect classification nor a fundamental right. Therefore, this Court's review of the constitutionality of the special legislation in question shall be examined under the traditional rational basis analysis. While the Court is mindful that all legislative acts exist under a presumption of validity, Santini v. Lyons, 448 A.2d 124, 126 (R.I. 1982), and that the General Assembly possesses the inherent power to enact certain special legislation, In Re AdvisoryOpinion To The Senate, 108 R.I. 302, 305, 275 A.2d 256, 258 (1971), such legislation must nevertheless comport with the constitutional mandates of equal protection pursuant to the provisions of both the state and federal constitutions.
Plaintiffs do not challenge the State's assertion that the special legislation is violative of equal protection. The State, on the other hand, asserts that there exists no reasonable or rational basis to distinguish between the plaintiffs, who are essentially seeking damages from the State for an alleged breach of contract, and other persons who may have been similarly harmed. The State alleges that the special legislation is nothing more than an ad hoc dispensation from the general rule that the State is immune to such a suit and that such legislation violates the equal protection clauses of both the state and federal constitutions. The Court agrees.
The general rule which allows the State to remain immune from a suit as alleged herein is meant to benefit all the citizens of the State. Any deviation therefrom should be made in the form of general legislation which would allow all persons alleging a similar claim to seek recovery. General legislation of this type could come in the form of the State's Governmental Tort Liability Act, G.L. 1956 (1988 Reenactment) § 9-31-1, et. seq., which would guarantee that every person enjoyed the same benefits as his or her neighbor, rather than a select few who had the ability to have a local legislator introduce a special bill as is here involved.
In examining the facts surrounding the instant case the Court has been unable to discern any logical, reasonable, or rational basis for the enactment of House Bills 89-H 6798 and 89-H 6799. Said bills merely provided a vehicle for plaintiffs to seek recovery from the State for an alleged breach of contract. This special legislation did nothing more than grant a personal gain to plaintiffs which clearly served no public purpose. Such an act cannot withstand an equal protection challenge even under the less stringent rational basis analysis.
The Court is further persuaded by an examination of decisions from other jurisdictions which have held that such ad hoc legislation violates equal protection. See, e.g., Cox v.State, 134 Neb. 751, 279 N.W. 482 (1938) (special act in favor of plaintiff denied equal protection to others similarly situated);Lucero v. Highway Dep't, 55 N.M. 157, 228 P.2d 945 (1951) (legislation permitting recovery for individual beyond statutory limit invalid); Jack v. State, 183 Okla. 375, 82 P.2d 1033
(1937) (special law invalid where general laws could apply);Collins v. Commonwealth, 262 Pa. 576, 106 A. 229 (1919) (act waiving sovereign immunity for a named plaintiff was unconstitutional special legislation); Serrine v. State,132 S.C. 241, 128 S.E. 172 (1925) (enactment of special law is unconstitutional where general laws apply).
Additionally, as the Maine Supreme Court pointed out inLewis v. Webb, 3 Me. 326, 336 (1825):
 On principal then it can never be within the bounds of legitimate legislation, to enact a special law, or pass a resolve dispensing with the general law . . . and granting a privilege and indulgence to one man, by way of exemption from the operation and effect of such general law, leaving all other persons under its operation. Such a law is neither just or reasonable in its consequences . . .
While this Court is not unmindful that Webb was decided well over one hundred years ago, the principal of providing equal protection for all persons similarly situated nevertheless remains a right firmly entrenched in our state and federal constitutions. Consequently, the special legislation which granted plaintiffs the right to seek recovery cannot survive a constitutional challenge based upon equal protection grounds.
Having held that the special legislation involved herein is a violation of equal protection, it is unnecessary to address the State's remaining arguments. However, one is worthy of mention. The State avers that in enacting the special legislation the General Assembly has breathed new life into a claim which had properly been dismissed by another justice of the Superior Court. In this vein, the State argues that the plaintiffs have been granted a new trial by the General Assembly in contravention of Article III of the Rhode Island Constitution. The State's argument has merit.
It is generally well-settled that the General Assembly cannot rightfully exercise judicial power. Such power is conferred only upon the courts, and any attempt by the General Assembly to contravene this power is constitutionally invalid. See, e.g.,Lemoine v. Martineau, 115 R.I. 233, 342 A.2d 616 (1975); Statev. Garnetto, 75 R.I. 86, 63 A.2d 777 (1949); Taylor v. Place,4 R.I. 324 (1856). In Taylor, the Court defined the exercise of judicial power as "the control of a decision in a case or the interference with its progress, or the alteration of the decision once made." 4 R.I. at 337.
In the case at bar, the General Assembly has clearly altered a decision which had been made. Justice Israel properly dismissed plaintiffs' claims based upon the State's sovereign immunity from suit. In passing House Bills 89-H 6798 and 6799 the General Assembly improperly exercised a judicial function. Were this Court inclined to sustain such a function, it would be creating a dangerous precedent. The very separation of our three branches of government has ensured that the lives, liberty, and property of all citizens shall be vigilantly protected. Any attempt by the General Assembly which would encroach or otherwise circumvent this separation cannot stand.
Lastly, the Court would note that it is unnecessary to reexamine plaintiffs' claim that the board's actions constituted an interference of contractual relations inasmuch as the Supreme Court's order of March 21, 1990, specifically remanded the case back to the Superior Court for proceedings consistent with House Bills 89-H 6798 and 89-H 6799. Moreover, that issue was dismissed by Justice Israel at the prior trial. Plaintiffs' remaining arguments are rendered moot by the Court's instant decision.
Accordingly, for the reasons herein above set out, this Court hereby dismisses the claims of James McGrath and Clinton H. Wynne against defendants.
Counsel shall prepare a judgment for entry in accord with this decision.
[1] In that the issue presently before the Court is the constitutional validity of the special legislation, which will be discussed, infra, it is unnecessary to cite § 36-4-16.3.